IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JEFF ALEX MAZON, and )<br>ALI HIJAZI, )<br>)<br>Defendants. )<br>) | Case No. 4:05-cr-40024-JBM-1 |

**DEFENDANT ALI HIJAZI'S OPPOSITION TO THE GOVERNMENT'S
MOTION TO STRIKE DEFENDANT'S MOTION TO DISMISS**

Pursuant to Local Rule 7.1(B)(2), Defendant Ali Hijazi submits this opposition to the Government's motion to strike Defendant's motion to dismiss the indictment.

**BACKGROUND**

On May 3, 2005, Defendant moved to dismiss the indictment against him. *See* Motion of Defendant Ali Hijazi to Dismiss the Indictment. In his supporting memorandum, Defendant explained that the Court lacks jurisdiction in this case and that the exercise of jurisdiction over Hijazi would violate his constitutional right of due process. *See* Memorandum in Support of Defendant Ali Hijazi's Motion to Dismiss the Indictment 4-27 (hereinafter, "Hijazi Mem.").

Significantly, the Government has not disputed any of the facts noted with bullet points in Hijazi's memorandum of law supporting his motion to dismiss.

*See* Hijazi Mem. at 3. Thus, the Government does not dispute that Hijazi is a foreign national who resides in Kuwait; that Hijazi has been to the United States only once on a trip unrelated to this case (and in 1993), and has never been to Illinois; that Hijazi has never filed a tax return or owned property in the United States; that Hijazi's alleged conduct charged in the indictment is not a crime in Kuwait; and that Hijazi did not foresee or expect that he might be haled into an American criminal court. Nor is it disputed that all of the alleged conduct of which Hijazi is accused occurred overseas in Kuwait. There is no dispute that this case involves the attempted application of federal criminal law to wholly extraterritorial conduct.1/

On May 17, 2005, the Government moved to strike Defendant's motion to dismiss on the ground that this Court has discretion not to entertain Defendant's motion. *See* Government's Motion to Strike Defendant's Motion to Dismiss (hereinafter, "Motion to Strike").

On May 20, 2005, the Government obtained a superseding indictment, which appears to be identical to the original indictment except for the addition of five new paragraphs. *See* Superseding Indictment ¶¶30-34. 2/

---

1/ In fact, given the transparency of the events in question, Hijazi, a highly respected businessman in Kuwait, who operated throughout the relevant time period to support the U.S. troops while under death threats and heavy security, has been advised by Kuwaiti counsel that his conduct was beyond reproach under the laws of Kuwait.

2/ The new paragraphs do not change the analysis supporting Hijazi's motion to dismiss. Three of the new paragraphs (¶30, ¶32, and ¶34) allege that Hijazi sent three e-mail messages to co-defendant Jeff Alex Mazon. The other two (¶31 and

## ARGUMENT

I. **THE FUGITIVE DISENTITLEMENT DOCTRINE DOES NOT APPLY IN THIS CASE.**

The Government contends that this Court has discretion not to rule on Hijazi's motion to dismiss because, as the Government puts it, Hijazi "continue[s] to remain outside the jurisdiction of this Court." Government's Memorandum in Support of Motion to Strike Defendant's Motion to Dismiss at 3 (hereinafter, "Gov. Mem.").

Although the Government never calls Hijazi a "fugitive"—at least not in so many words—the cases upon which the Government relies involve a doctrine known as the fugitive disentitlement doctrine. That doctrine has its origin in Supreme Court cases holding that "an appellate court may dismiss the appeal of a [criminal] defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez* v. *United States*, 507 U.S. 234, 239 (1993).

As shown below, the fugitive disentitlement doctrine is inapplicable here because (a) first and foremost, Ali Hijazi *is not a fugitive* in any sense of the term, (b) even if he were a fugitive, the doctrine would not apply on the facts of this case, and (c) the cases upon which the Government relies do not support its position.

---

¶33) allege that Mazon attempted to make deposits at two financial institutions in the United States and do not allege any conduct on Hijazi's part. The last of three e-mails allegedly was received by Mazon in the United States; presumably the other two were received by him in Kuwait. It is alleged that Mazon's e-mail accounts were "located in the United States." But a person sitting at his computer in Kuwait who types an e-mail message and sends it off into cyberspace is not engaging in conduct within the United States, even if, unbeknownst to him, he causes electrons to flow through some piece of computer hardware located stateside.

3

### A.    Ali Hijazi Is Not A Fugitive.

For several reasons, Ali Hijazi is not a fugitive. Therefore, the fugitive disentitlement doctrine cannot be applied against him.

First, far from being a fugitive, Hijazi is a resident of a foreign country who has merely declined to travel to the United States to face criminal charges here. That is an entirely lawful (and perfectly logical) decision. It does not make Hijazi a fugitive.

Second, Hijazi has not been tried and convicted of a crime, and he has not absconded in violation of law. He is, of course, presumed innocent of the charges against him until those charges are proven to a jury beyond a reasonable doubt. And his election to remain outside of the United States is not evidence of guilt or an independent crime. In the Supreme Court cases from which the fugitive disentitlement doctrine springs, the defendants were individuals who were tried by jury and convicted of crimes and then fled or escaped while their appeals were pending. *See, e.g.*, *Molinaro* v. *New Jersey*, 396 U.S. 365 (1970) (defendant jumped bail after conviction); *Smith* v. *United States*, 94 U.S. 97 (1876) (defendant escaped from prison after conviction). Hijazi is not a bail jumper or an escaped convict.

Third, Hijazi has not fled. To be a fugitive, one must flee. *See* BLACK'S LAW DICTIONARY 604 (5th ed. 1979) ("*Fugitive.* One who flees; used in criminal law with the implication of a flight, evasion, or escape from arrest, prosecution, or imprisonment."). Hijazi has not taken flight. He has remained in Kuwait the entire time. It should be recalled that the alleged criminal conduct of which Hijazi is

4

accused is entirely extraterritorial. Since he was never in the United States during the alleged commission of the crime, Hijazi could not be a fugitive from the United States. *See id.* ("*Fugitive from justice.* A person who, having committed a crime, flees from jurisdiction of court where crime was committed or departs from his usual place of abode and conceals himself within the district."). *Cf. Young* v. *Matthews*, 174 F.2d 35, 35 (D.C. Cir. 1949) ("[O]ne who was not in the demanding state at the time of the crime cannot be a fugitive from justice."); *Tennessee* v. *Jackson*, 36 F. 258, 260 (E.D. Tenn. 1888) ("Jackson was not a fugitive. He had not, all his life, been in Tennessee; [and] had never fled from it * * *.").

Fourth, it cannot be said that Hijazi is a fugitive because he has already submitted to the custody of Kuwaiti authorities. As the Government notes in its memorandum, "[b]ased on information received from INTERPOL, Hijazi was taken into custody in Kuwait on or about April 26, 2005, and then released on a 500 Kuwaiti Dinar bail." Gov. Mem. at 1-2. 3/ A person who allows himself to be taken into custody by his resident government cannot be called a fugitive from justice. 4/

Finally, the decisions of the Seventh Circuit and the Supreme Court confirm that Hijazi is not a fugitive. In *United States* v. *$40,877.59 in United States Currency*, 32 F.3d 1151 (7th Cir. 1994), the Seventh Circuit held that "to be a

---

3/    Interestingly, the information provided to Kuwaiti authorities by INTERPOL indicated erroneously that Hijazi was a "convicted fugitive."

4/    We cannot let pass without comment the Government's statement that "Hijazi's current whereabouts are unknown." Gov. Mem. at 2. If by that one-liner the Government means to suggest that Hijazi is in hiding, that is a smear unworthy of the Government. Hijazi was taken into custody, without resistance by him, and then released on bail. He is entitled to his liberty.

fugitive, the defendant must intentionally take a material step towards commission of the crime while in the state and then absent himself from that state" and that, furthermore, "to be a fugitive, a defendant must flee the state with the intent to avoid prosecution." *Id*. at 1156. Hijazi meets neither of these tests of fugitivity. First, the Government does not allege that Hijazi committed criminal conduct "while in" the United States and then "absent[ed] himself." All of the conduct of which he is accused took place in Kuwait, and in Kuwait he remains. Second, Hijazi did not "flee" the United States in order "to avoid prosecution." Indeed, he has never fled from this country or any country, to avoid prosecution or for any reason.

In *United States* v. *Marshall*, 856 F.2d 896 (7th Cir. 1988), the Government argued that "mere absence" from a jurisdiction in which a federal indictment is pending renders a defendant a fugitive from justice for purposes of the federal tolling statute, 18 U.S.C. §3290. 5/ The court, however, rejected that argument. *Compare Marshall*, 856 F.2d at 897 (noting that the Government "contends that Marshall's mere absence from Illinois, regardless of his intent, is sufficient to toll the statute of limitations") *with id*. at 900 (holding instead that "the government must show that Marshall left Illinois with the intent to avoid arrest or prosecution"). 6/ *See also United States* v. *Gonzalez*, 122 F.3d 1383, 1387 (11th Cir.

---

5/ 18 U.S.C. §3290 provides: "No statute of limitations shall extend to any person fleeing from justice."

6/ In *Streep* v. *United States*, 160 U.S. 128 (1895), the Supreme Court construed the similarly worded predecessor to §3290. The Court held that "[i]n order to constitute a fleeing from justice" there must be "a flight with the intention of

6

1997) (applying same definition in context of federal statutes criminalizing fugitive's possession of firearm).  Thus, the mere fact that Hijazi is not present in Illinois is not enough to declare him a fugitive.  The Government would have to show that Hijazi departed for the purpose of avoiding arrest or prosecution.  That the Government cannot do.

Finally, *Degen* v. *United States*, 517 U.S. 820 (1996), clinches the analysis in Hijazi's favor.  Brian Degen, a person with dual U.S. and Swiss citizenship, moved to Switzerland with his family in 1988.  In 1989, a grand jury indicted Degen for drug trafficking, and the Government also commenced a civil forfeiture action against property located in the United States allegedly purchased with his drug money.  Degen did not return to face the criminal charges and could not be extradited.  *See id*. at 821-822.  While still in Switzerland, Degen filed an answer in the civil action to contest the forfeiture.  The District Court, however, granted the Government's motion to strike Degen's claims and entered summary judgment against him, holding that he "was not entitled to be heard in the civil forfeiture action because he remained outside the country, unamenable to criminal prosecution."  *Id*. at 822.  But the Supreme Court held that the fugitive disentitlement doctrine could not be applied against Degen so as to bar him from litigating his claim in the civil action from outside the United States.  Significantly, the Court expressly did not hold that Degen was a fugitive.  *See id*. at 828.

---

avoiding being prosecuted."  *Id*. at 133.  Again, Hijazi did not take flight.  The conduct of which he is accused took place in Kuwait, and in Kuwait he remains.

7

That Hijazi is not a fugitive follows *a fortiori* from *Degen*. Degen was a U.S. citizen. Hijazi is not. Degen left the United States for a foreign country. Hijazi has never resided in the United States and has not left Kuwait. Degen was accused of committing crimes within the jurisdiction of the United States. Hijazi has not been. Degen sought to intervene in a civil case as a claimant and to participate in the litigation. Hijazi seeks only to determine whether this Court has jurisdiction in this criminal case to which he is involuntarily a party. Given these differences, if the Supreme Court could not say that Degen was a fugitive, this Court surely cannot say that Ali Hijazi is one.

### B.  The Doctrine Would Not Apply Here Even If Hijazi Were A Fugitive.

Even if Hijazi were a fugitive—which, we repeat, he is not—the fugitive disentitlement doctrine still would not apply.

First, the doctrine does not apply where, as here, it is the Government that is on the offense (*i.e.*, the party seeking to change the legal status quo or overturn a judgment) and the accused is on the defense. *See United States* v. *Sharpe*, 470 U.S. 675, 681 n.2 (1985) (refusing to apply the doctrine where the Government was the party that petitioned for certiorari, which is "very different" from "the situation in which a fugitive defendant is the party seeking review here"); *$40,877.59 in United States Currency*, 32 F.3d at 1154 ("[T]he Supreme Court has determined that it will not apply the doctrine when the fugitive is responding to

government action."). 7/  Unlike the defendants in *Molinaro* v. *New Jersey*, and *Smith* v. *United States*, Hijazi is not seeking *to reverse* a judgment of criminal conviction, but only to maintain the pre-indictment status quo.

Second, the doctrine does not apply to a defendant seeking to vindicate constitutional rights. The fugitive disentitlement doctrine can be applied to a criminal defendant who has been convicted of a crime and is a fugitive during the pendency of an appeal because "a convicted criminal has no constitutional right to an appeal." *Ortega-Rodriguez*, 507 U.S. at 253 (Rehnquist, C.J., joined by White, O'Connor, and Thomas, JJ., dissenting). But a defendant, such as Hijazi, who has not been tried or convicted and thus is presumed innocent has a constitutional right to offer a defense and to argue that the criminal court lacks jurisdiction. Hijazi has so argued, and has also argued that an assertion of jurisdiction over him would violate due process. The fugitive disentitlement doctrine cannot be applied so as to permit a court to refuse to rule on such arguments.

The fugitive disentitlement doctrine represents an exercise of an Article III court's inherent powers. *See Degen*, 517 U.S. at 823-824 (citing *inter alia Chambers* v. *NASCO, Inc.*, 501 U.S. 32 (1991), and *Roadway Express, Inc.* v. *Piper*, 447 U.S. 752 (1980)). But a court's use of inherent power "is invalid if it conflicts with constitutional or statutory provisions." *Thomas* v. *Arn*, 474 U.S. 140, 148

---

7/    There is no merit to the claim that Hijazi is "seeking to use our judicial system as both a sword and a shield." Gov. Mem. at 2. Hijazi is not the party who initiated this action, and he is not a civil plaintiff or claimant against the government. He seeks only to defend himself against the prosecutorial juggernaut of the U.S. Department of Justice. Hijazi raises only a shield, and has drawn no sword.

9

(1985). *Accord Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 254 (1988); *Ortega-Rodriguez,* 507 U.S. at 253 (Rehnquist, C.J., joined by White, O'Connor, and Thomas, JJ., dissenting).  If Hijazi's motion to dismiss is correct, this Court lacks jurisdiction and could not exercise jurisdiction over Hijazi without violating due process.  Therefore, the fugitive disentitlement doctrine cannot be used to refuse to rule on his motion.

        C.      **The Cases Cited By The Government Fail To Support Its Position.**

The Government cites three cases in which defendants outside of the United States moved to dismiss indictments. 8/  All three of those cases rely upon the fugitive disentitlement doctrine, which, as shown above, does not apply here. Furthermore, in two of those cases, the courts decided that they would rule on the motions to dismiss.  *See United States* v. *Noriega*, 683 F. Supp. 1373 (S.D. Fla. 1988); *United States* v. *Shapiro*, 391 F. Supp. 689 (1975).  Thus, those cases provide no support for the Government's suggestion that the Court abstain from deciding Hijazi's motion. 9/

---

8/    The Government also cites *Hughes* v. *Thompson*, 415 U.S. 1301 (1974), in which Justice Douglas, acting as Circuit Justice, concluded that a trial court has the power to rule on a motion to dismiss an indictment prior to arraignment.  The movant in that case—billionaire aviator and movie mogul Howard Hughes—was not, of course, a foreign national or an overseas defendant.  *United States* v. *One Lot of U.S. Currency*, 628 F. Supp. 1473 (S.D. Fla. 1986), which is also cited in the Government's memorandum, is a civil forfeiture case the holding of which is contrary to the Supreme Court's subsequent decision in *Degen*.

9/    Unlike Hijazi, the defendants in the *Shapiro* and *Noriega* cases truly were fugitives—or at least they were determined to be fugitives by the courts in those cases.  In *Shapiro,* the defendant was indicted for refusing to report for induction into the military and subsequently fled to Canada after his release on bail.  *See*

10

In the third case, the court denied the motion to dismiss without prejudice. *See United States* v. *Oliveri*, 190 F. Supp. 2d 933 (S.D. Tex. 2001). But that case involved facts very different from this case. In *Oliveri*, the defendant, an Italian citizen, was served with a grand jury subpoena while he was in Houston, Texas on business. After he failed to appear before the grand jury, he was indicted for contempt of court. Applying the fugitive disentitlement doctrine, the court held that the defendant "is in fact a 'fugitive.'" *Id*. at 936. The court said that "Oliveri is aware of the charges pending against him in this district and is purposefully absenting himself from the United States," even though "Oliveri apparently desires to conduct business in this country." *Id*.

There are three obvious and critical differences between *Oliveri* and this case. *First*, the court held that Oliveri was a fugitive; as explained above, Hijazi is not a fugitive. Second, Oliveri's intentions were different than Hijazi's. Oliveri wanted to return to the United States to conduct business and would have done so but for the indictment. Thus, he was "purposefully absenting" himself from the United States. Not so with Hijazi. He had no plans or desire to come when he was indicted. One cannot be "absent" from a location where one has no desire or duty to be in the first pace.

---

*Shapiro*, 391 F. Supp. at 690. He clearly was a fugitive. The court in *Noriega* regarded Panamanian General Manuel Noriega as a fugitive. *See Noriega*, 683 F. Supp. at 1373 ("Noriega is a fugitive."). And the General apparently conceded that he was, at least in some sense, a fugitive. *See id*. at 1374 ("Noriega argues that he is not an 'ordinary' fugitive fleeing United States justice.").

11

*Second*, Oliveri was served with a grand jury subpoena while he was voluntarily in the United States on business. He then failed to appear before the grand jury. Thus, Oliveri brought himself within the jurisdiction of the court, and his alleged crime involved conduct on his part within the United States. In contrast, Hijazi has never submitted to the jurisdiction of the court, and his alleged criminal conduct took place entirely overseas.

## II. THIS COURT SHOULD RULE ON HIJAZI'S MOTION TO DISMISS EVEN IF IT HAS DISCRETION NOT TO DO SO.

There is no doubt that this Court *may* rule on Hijazi's motion, for a number of reasons:

(1) The rules permit it. *See* Fed. R. Crim. P. 12(b)(2)-(3) (permitting some motions before trial and requiring others); *see also* Fed. R. Crim. P. 43(a) (indicating when defendant's presence is required).

(2) The Government concedes that the Court can do it. *See* Motion to Strike at 1 ("this Court has discretion to entertain [Hijazi's] motion to dismiss").

(3) All the cases cited by the Government (setting aside the fact that each of those cases involved a fugitive, which Hijazi is not) agree that a court has discretion to rule on an overseas fugitive's motion to dismiss an indictment. In the *Shapiro* and *Noriega* cases, the courts held they would rule on such motions.

(4) The fugitive disentitlement doctrine—even if it could be properly applied here—"is always discretionary." *Ortega-Rodriguez*, 507 U.S. at 250 n.23. *See also Degen*, 517 U.S. at 823-825.

Accordingly, if the Court concludes that a ruling on Hijazi's motion to dismiss is discretionary, we would respectfully request that the Court exercise that discretion and entertain the motion. 10/

Like any accused in the American criminal justice system, Hijazi has a right to raise pretrial jurisdictional and constitutional objections to the prosecution. Federal courts have a general duty to rule on such motions. *See* Fed. R. Crim. P. 12(d) ("The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling."). And it is especially important for Hijazi to receive a judicial determination on his motion because he is a foreign citizen who has been haled into a court of a stranger sovereign half a world away from his home. *See Noriega*, 683 F. Supp. at 1375 (foreign defendant allowed to challenge indictment since it is "important that our frequent protestations about due process, presumptions of innocence and fair play be given meaning").

Hijazi should not be required to travel to the United States to seek dismissal of the indictment because all of the conduct of which Hijazi was accused occurred outside of the United States. The Government alleges that Hijazi violated the criminal laws of this country without ever setting foot outside of Kuwait. If the Government can assert extraterritorial jurisdiction over Hijazi, Hijazi ought to be allowed to raise an extraterritorial defense.

---

10/    The Government complains that Hijazi has not "asked this Court to exercise its discretion." Gov. Mem. at 2. But such a request is implicit in Hijazi's motion to dismiss. In any event, if an express request must be made, Hijazi does so now.

13

The only conceivable basis on which the Court might rightly decline to rule on Hijazi's motion is that he is a fugitive. But as explained above, Hijazi bears none of the hallmarks of fugitivity. His alleged conduct was not here. He did not flee from here (or anywhere). He is not in hiding. He has not been tried or convicted. And he did not escape from confinement or custody. On the contrary, he was taken into custody in Kuwait without resistance on his part. Even the Government cannot bring itself to call him a "fugitive." Hijazi simply is not a fugitive in any meaningful sense of the term. That he has not elected to leave his home to stand trial here does not *ipso facto* make him a fugitive.

The Government contends that it would be "bad public policy" to decide Hijazi's motion to dismiss. Gov. Mem. at 6. We think it is bad public policy to allow a foreign citizen, against whom nothing has been proven in open court, to remain under indictment in this country without a determination whether the Court has jurisdiction or whether the prosecution is constitutional. *See Noriega*, 683 F. Supp. at 1375:

> Presumably the factual and legal bases for the indictment were considered by the Justice Department to be entirely adequate when the indictment was returned. * * * If the charge is to stand in the records of this court with the implications which flow from an unanswered indictment, the Government should be quite willing to support its position and disavow any idea that the continuation of a possibly defective indictment should remain outstanding until the defendant appears with his attorney to demonstrate such a defect.

The Government sternly warns that allowing foreign nationals who have been charged with subcontracting violations to challenge indictments from

14

overseas would have "far reaching" implications.  Gov. Mem. at 6.  But such hyperbole is the native tongue of government lawyers.  For example, in the *Noriega* case, the Government "argue[d] that if this court allows Noriega to attack the validity of his indictment while a fugitive, it will open the 'floodgates' to similar motions by thousands of fugitives."  683 F. Supp. at 1374.  The *Noriega* court ruled against the Government—and thereby threw open those "floodgates"—more than 17 years ago, in 1988.  So, before this Court accepts a "floodgates" argument here in 2005, it should require the Government to document the "thousands" of motions by fugitives that the Government claimed the ruling in *Noriega* would cause.

## CONCLUSION

For the foregoing reasons, the Government's motion to strike should be denied, and the Court should proceed to consider and rule on the merits of Defendant Hijazi's motion to dismiss.

Respectfully submitted,

  s/ H. Christopher Bartolomucci
Ty Cobb
H. Christopher Bartolomucci
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone:  (202) 637-5600
Fax:  (202) 637-5900
E-mail:  tcobb@hhlaw.com
E-mail:  hcbartolomucci@hhlaw.com

Dated:  May 31, 2005               *Counsel for Defendant Ali Hijazi*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2005, I electronically filed the foregoing Defendant Ali Hijazi's Opposition to the Government's Motion to Strike Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of the filing to:

> Greggory R. Walters
> Assistant United States Attorney
> One Technology Plaza
> 211 Fulton Street, Suite 400
> Peoria, Illinois 61602
>
> *Counsel for Plaintiff*
>
> John Scott Arthur
> 14315 South 108th Avenue
> Orland Park, Illinois 60497
>
> *Counsel for Defendant Jeff Alex Mazon*

                                                s/ H. Christopher Bartolomucci
                                                H. Christopher Bartolomucci