**E-FILED**
Tuesday, 21 June, 2005  09:18:26 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | Case No. 05-40024-02 |
| | ) | |
| Ali Hijazi | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

Now before the court are the defendant's motion to dismiss the indictment against him (Doc. #15) and the government's motion to strike that motion to dismiss (Doc. #19). Pursuant to Local Rule 72.1, Judge McDade has referred the matter to me for a report and recommendation. After carefully considering all of the submissions of the parties, and pursuant to 28 U.S.C. §636(b)(1)(B), I recommend that the motion to strike be **GRANTED** and the motion to dismiss be **STRICKEN**.

## BACKGROUND

On March 16, 2005, a grand jury sitting in this District returned an indictment against Ali Hijazi and Jeff Alex Mazon, charging them with violations of the Major Fraud Act, 18 U.S.C. §1031(a), the wire fraud statute, 18 U.S.C. § 1343, and the aiding and abetting statute, 18 U.S.C. § 2. The indictment alleges that while Mazon was stationed in Kuwait as a procurement manager for a prime contractor on a government contract, he inflated a bid on a subcontract received from a Kuwaiti company of which Hijazi was the managing partner.

Hijazi is a citizen of Kuwait. He has been to the United States once in 1993, on a matter unrelated to this case. That trip did not bring him to Illinois. He has never filed a tax return, state or federal, in the United States. He owns no property in this country and has never filed a tax return here. The conduct of which he is accused in the indictment is not, according to Hijazi, a crime in Kuwait, which is where the conduct took place. Hijazi was arrested in Kuwait, appeared before a judge in Kuwait, posted bond, and was released. He is not currently in custody.

The defendant has filed a motion to dismiss the indictment, arguing that the statutes do not apply and cannot constitutionally be applied to the conduct of foreign nationals outside the boundaries of the United States. The government responded by filing a motion to strike the motion to dismiss, asserting that the court has discretion to decline to rule until such time as the defendant is personally present in court.

## DISCUSSION

For reasons that will become clear, the United States' motion to strike defendant's motion to dismiss will be considered before the motion to dismiss. In this motion, the government asserts that this court should decline to exercise its discretion to rule on the motion to dismiss before the defendant has been arraigned in a court of the United States.

The government's argument stems from Hughes v. Thompson, 415 U.S. 1301, 1302 (Douglas, Circuit Justice 1974). In that case, the defendants were indicted and were scheduled to appear before a district court for arraignment. They filed a motion to dismiss and a motion to stay all proceedings pending ruling on the motion to dismiss. The District Court denied the motion to stay, indicating that the motion to dismiss would be addressed

2

following arraignment. Their petition for writ of mandamus and/or prohibition was denied by the Circuit Court, and defendants then sought leave of the Supreme Court to file such a petition.

Justice Douglas first noted that whether the District Court decides a motion to dismiss an indictment before the arraignment is a matter for the

"sound discretion of the District Court. The District Court certainly has the power to follow that course and sometimes it may be important to prevent harassment or the use of other unconstitutional procedures against an accused."

Id. Speaking for the Court, Justice Douglas declined to order that the District Court exercise its discretion in a particular manner absent "an extremely unusual case." Id. at 1302-03.

The Supreme Court had previously recognized this doctrine and applied it in what has become to be known as the "fugitive disentitlement" doctrine in Molinaro v. New Jersey, 396 U.S. 365 (1970). In that case, the Court dismissed the appeal of a defendant who failed to surrender to authorities after bail was revoked, explaining that his absence "disentitles the defendant to call upon the resources of the Court for determination of his claims." Id. at 366. This doctrine was discussed and reaffirmed in Degen v. United States, 517 U.S. 820 (1996). The doctrine stems from Smith v. United States, 94 U.S. 97 (1876) and other cases of that era which held that courts may refuse to hear criminal appeals unless the convicted party is "where he can be made to respond to any judgment we may render."). See also, United States v. Shelton, 482 F.2d 848, 849 (5th Cir. 1973); United States v. Eagleson, 874 F. Supp. 27, 29-31 (D.Mass.1994).

Several courts have noted the primary reason for declining to decide such motions until the defendant is physically before the court. In United States v. Oliveri, 190 F.Supp.

3

2d 933 (S.D.Tex. 2001), the defendant was out of the country at the time of his indictment.

Defendant filed a motion to dismiss the indictment, and the District Court declined to reach

the merits of the motion and denied it, stating:

> It appears that Oliveri is attempting to obtain the benefit of a favorable ruling from this court without risking the burdens that may flow from an adverse ruling. If this court were to decide, on the merits, not to dismiss the indictment...such a ruling would have on effect on Oliveri because he could remain outside the jurisdiction of this court. On the other hand, if the court were to dismiss the indictment against Oliveri he would obtain a significant benefit from this court at no risk to him. Absent some special circumstance, or overriding policy concern, this court refuses to bestow such a benefit on Oliveri. Moreover, the court notes that reaching the merits of a fugitive's pretrial motion may encourage others in the same position to take flight from justice.

Id. at 936. See also, U.S. v. Shapiro, 391 F. Supp. 689 (D.N.Y. 1975)("The basis of the

decisions...seems to be the desire of the courts to insure some form of 'mutuality': the

courts are unwilling to allow a defendant to gain the benefit of a favorable result when he

is unwilling to risk the burden of an adverse decision."); Johnson v. Laird, 432 F.2d 77 (9th

Cir. 1970)(noting that upon favorable ruling, defendant free to return to this country, but no

indication that he would surrender himself if adverse ruling); United States v. Delagarza-

Villarreal, 141 F.3d 133, 136 (5th Cir. 1997); Dawkins v. Mitchell, 437 F.2d 646, 649

(D.C.Cir. 1970)("appellants have attempted to invoke only half our jurisdiction, i.e. the

winning side.").

Hajazi argues that he is not a fugitive, but I disagree. One court has explained that:

> the intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, "constructively flees" by deciding not to return."

4

U.S. v. Eagleson, 874 F. Supp. 27, 29 (D.Mass. 1994), quoting U.S. v. Catino, 735 F.2d 718 (2d Cir. 1984).

Like the defendants in the cases cited above, Hajazi only wants this court to resolve the jurisdictional issue if he can be assured that the outcome is favorable to him. There is nothing to indicate that an unfavorable decision would be followed by an appearance of the defendant to defend against the indictment. There is not even the slightest whiff of mutuality.

None of the authorities cited by defendant stand for the proposition that the jurisdictional issue *must* be resolved before the defendant is arraigned. I find nothing extraordinary about this case that would mandate the exercise of this court's discretion. Considering that defendant entered into a business relationship with the United States' government, it would not appear to be a stretch to argue that he submitted to this court's jurisdiction, nor would it seem an undue hardship for defendant to appear in this District if he believes that the case against him should be dismissed. Until such time as he appears, I do not believe that the court should exercise its discretion.

## CONCLUSION

Accordingly, I conclude that it would be inappropriate to decide the issues raised in the motion until such time as the defendant is within this jurisdiction and has been arraigned. I therefore recommend that the United States' motion to strike be allowed and that the motion to dismiss be stricken. Defendant may re-raise these issues should he appear in this jurisdiction for arraignment on indictment.

5

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within ten (10) working days after service of this Report and Recommendation. Fed.R.Civ.P.72(b); 29 U.S.C.636 (b)(1). Failure to object will constitute a waiver of objections on appeal. Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999); Video Views Inc. v. Studio 21, Ltd., 797 F.2d 538 (7th Cir. 1986).

ENTER this 20th day of June, 2005.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE

6