**E-FILED**
Friday, 01 July, 2005  12:42:59 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-40024-02 |
| ) | |
| JEFF ALEX MAZON, and ) | |
| ALI HIJAZI, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT ALI HIJAZI'S OBJECTIONS
## TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), Defendant

Ali Hijazi submits the following objections to the Report and Recommendation of

United States Magistrate Judge John A. Gorman dated June 20, 2005 (hereinafter,

"R&R").

## BACKGROUND

On May 3, 2005, Defendant moved to dismiss the indictment as it

pertains to him.  *See* Motion of Defendant Ali Hijazi to Dismiss the Indictment

("Motion to Dismiss").  In his supporting legal memorandum, Defendant explained

that this Court lacks jurisdiction and, furthermore, that the attempted exercise of

jurisdiction over him by this Court would violate his constitutional right of due

process.  *See* Memorandum in Support of Defendant Ali Hijazi's Motion to Dismiss

the Indictment 4-27.

On May 17, 2005, the Government moved to strike Defendant's motion to dismiss.  *See* Government's Motion to Strike Defendant's Motion to Dismiss (hereinafter, "Motion to Strike").

On June 1, 2005, Hijazi filed his an opposition to the Motion to Strike. *See* Defendant Ali Hijazi's Opposition to the Government's Motion to Strike Defendant's Motion to Dismiss (hereinafter, "Opposition to Motion to Strike").

This Court referred to Magistrate Judge Gorman both Hijazi's Motion to Dismiss and the Government's Motion to Strike.  On June 20, 2005, Magistrate Judge Gorman issued his R&R recommending that the Motion to Strike be granted and that the Motion to Dismiss be stricken. 1/

## OBJECTIONS

## I.    ALI HIJAZI IS NOT A "FUGITIVE."

Magistrate Judge Gorman concludes in the R&R that Ali Hijazi is a fugitive.  R&R at 4.  That conclusion is flat-out wrong—factually, legally, and as a matter of pure common sense.  Ali Hijazi is not a fugitive in any meaningful sense of the word.  And because he is not a fugitive, the so-called fugitive disentitlement doctrine does not supply a basis for striking the Motion to Dismiss.

There are several compelling reasons why Hijazi is not a fugitive. Each reason is discussed below.

---

1/    The facts as found by the Magistrate Judge and stated on page two of the R&R are correct, with one exception.  Ali Hijazi is not a Kuwaiti citizen.  Although he is a longtime resident of Kuwait, he is a citizen of the Lebanon.  Another factual error appears on page five of the R&R and is discussed below.  *See infra* at 17.

## A.   Hijazi Has Not Fled.

It should be obvious that, in order to be a fugitive, one must flee.  The Supreme Court long ago explained in *Streep* v. *United States*, 160 U.S. 128 (1895), that, "[i]n order to constitute a fleeing from justice" there must be "a flight with the intention of avoiding being prosecuted."  *Id*. at 133.  The Seventh Circuit, too, has held that taking flight is a *sine qua non* of fugitivity.  *See United States* v. *$40,877.59 in U.S. Currency*, 32 F.3d 1151, 1156 (7th Cir. 1994) ("[T]his court has held that to be a fugitive, a defendant must flee the state with the intent to avoid prosecution.") (citing *United States* v. *Marshall*, 856 F.2d 896, 899-900 (7th Cir. 1988)).  *See also* BLACK'S LAW DICTIONARY 604 (5th ed. 1979) ("*Fugitive*.  One who flees; used in criminal law with the implication of a flight, evasion, or escape from arrest, prosecution, or imprisonment."); WEBSTER'S II NEW COLLEGE DICTIONARY 451 (2001) (defining a fugitive as "One who flees.").

Here, there is no allegation that Hijazi (who is neither a citizen nor resident of the United States) has ever fled or taken flight from the United States— or any country for that matter.  *Cf. Tennessee* v. *Jackson*, 36 F. 258, 260 (E.D. Tenn. 1888) ("Jackson was not a fugitive.  He had not, in all his life, been in Tennessee; [and] had never fled from it * * *.").  For that reason alone, he cannot be considered a fugitive.

## B.   Hijazi's Mere Absence From The United States Does Not Make Him A Fugitive.

The fact that Hijazi has declined to travel to the United States to face criminal charges here, without more, does not turn him into a fugitive.  As a foreign

3

citizen and resident, Hijazi has no legal obligation to be present in, or travel to, the United States. On the contrary, he has every right to remain in Kuwait. His mere absence from the United States does not make him a fugitive. *See Marshall*, 856 F.2d at 897 (rejecting the Government's argument that "Marshall's mere absence from Illinois," the state in which he was indicted, made him a fugitive).

Hijazi cannot be declared a "fugitive" based upon mere absence from the United States because his alleged criminal conduct is entirely extraterritorial. That is, all of the conduct of which Hijazi is accused occurred entirely outside of the United States, in Kuwait. Logically, because he was never in the United States during the alleged commission of the crime, Hijazi cannot be a fugitive from the United States. *See Young* v. *Matthews*, 174 F.2d 35, 35 (D.C. Cir. 1949) ("[O]ne who was not in the demanding state at the time of the crime cannot be a fugitive from justice."); BLACK'S LAW DICTIONARY 604 (5th ed. 1979) ("*Fugitive from justice.* A person who, having committed a crime, flees from jurisdiction of court where crime was committed or departs from his usual place of abode and conceals himself within the district.").

**C.   Hijazi Submitted To The Custody Of Kuwaiti Authorities.**

As Magistrate Judge Gorman found, Hijazi has already submitted to the custody of Kuwaiti authorities. *See* R&R at 2 ("Hijazi was arrested in Kuwait, appeared before a judge in Kuwait, posted bond, and was released."). Clearly, a person who (a) allows himself to be taken into custody by the government of the country in which he resides, (b) appears before a judicial officer of that country, and

(c) is released from custody following the posting of a bond, cannot be called a "fugitive from justice." The R&R's conclusion that Hijazi is a fugitive flies in the face of facts that the R&R itself recognizes.

### D.   The R&R Is Directly Contrary To Controlling Decisions Of The U.S. Supreme Court And The Seventh Circuit.

Controlling decisions of the Supreme Court and the Seventh Circuit confirm that Hijazi is not a fugitive. Although these cases were cited in Hijazi's opposition to the Motion to Strike, the R&R has no response whatsoever to them.

In *United States* v. *$40,877.59 in U.S. Currency*, 32 F.3d 1151 (7th Cir. 1994), the Seventh Circuit held that in order to be a fugitive, two conditions must be met. First, "to be a fugitive, the defendant must intentionally take a material step towards commission of the crime while in the state and then absent himself from that state," and, second, "to be a fugitive, a defendant must flee the state with the intent to avoid prosecution." *Id*. at 1156. In Hijazi's case, neither of these fugitivity requirements is satisfied. The Government does not allege that Hijazi committed criminal conduct "while in" the United States and then "absent[ed] himself." All of the conduct of which he is accused took place in Kuwait, where Hijazi remains. Nor is there any allegation that Hijazi did not "fle[d]" from the United States or Illinois "with the intent to avoid prosecution." Indeed, he has never fled from this country or *any* country.

In *United States* v. *Marshall*, 856 F.2d 896 (7th Cir. 1988), the Government took the position (much like the R&R does here) that "mere absence" from a jurisdiction in which a federal indictment is pending renders a defendant a

fugitive from justice for purposes of the federal tolling statute.  *See id*. at 897.  The Seventh Circuit, however, rejected that argument.  *See id*. at 900 (holding that "the government must show that Marshall left Illinois with the intent to avoid arrest or prosecution").  Thus, the mere fact that Hijazi is not present in the United States or Illinois is not enough to declare him a fugitive.  Under *Marshall*, the test is whether Hijazi departed the indicting jurisdiction for the purpose of avoiding arrest or prosecution.  He did not.

Finally, *Degen* v. *United States*, 517 U.S. 820 (1996), the Supreme Court's most recent case involving the fugitive disentitlement doctrine, confirms that Hijazi is not a fugitive.  The facts of *Degen* were as follows:  Brian Degen, a person with dual U.S. and Swiss citizenship, moved to Switzerland with his family in 1988.  Subsequently, in 1989, an American grand jury indicted Degen for drug trafficking.  At the same time, the U.S. Government commenced a civil forfeiture action against property located in the United States allegedly purchased with Degen's drug money.  Degen did not return to face the criminal charges, and he could not be extradited from Switzerland.  *See id*. at 821-822.  While still in Switzerland, Degen filed an answer in the civil action to contest the forfeiture.  The District Court, however, granted the Government's motion to strike Degen's claims and entered summary judgment against him, holding that he "was not entitled to be heard in the civil forfeiture action because he remained outside the country, unamenable to criminal prosecution."  *Id*. at 822.  The Supreme Court, however, held that the fugitive disentitlement doctrine could not be applied against Degen so

6

as to bar him from litigating his claim in the civil action from outside the United States. Notably, the Supreme Court declined to hold that Degen was a fugitive. *See id*. at 828.

That Hijazi is not a fugitive follows *a fortiori* from *Degen*. Degen was a U.S. citizen. Hijazi is not. Degen left the United States for a foreign country. Hijazi has never resided in the United States and has not left Kuwait. Degen was accused of committing crimes within the jurisdiction of the United States. Hijazi has not been so accused. Degen sought to intervene in a civil case as a claimant and to participate in the litigation. Hijazi seeks only to determine whether this Court has jurisdiction in this criminal case to which he is involuntarily a party. Given these differences, if the Supreme Court could not say that Degen was a fugitive, this Court surely cannot say that Ali Hijazi is one. 2/

### E.    Not Even The Government Argues That Hijazi Is A Fugitive.

In concluding that Hijazi is a "fugitive," the R&R has gone out on a limb on which the Government has not dared to climb. In opposition to the Motion to Strike, we pointed out that the Government's reliance upon the fugitive disentitlement doctrine was improper because "the Government never calls Hijazi a 'fugitive.'" Hijazi Opp. to Mot. to Strike at 3; *see also id*. at 14 ("Even the Government cannot bring itself to call [Hijazi] a 'fugitive.'"). The Government in its next filing conceded the point. *See* Gov. Reply to Hijazi Opp. at 2 ("The Defendant

---

2/     *Degen* also puts to rest any notion that someone who is under indictment in the United States yet declines to travel here from overseas to face the charges is, without more, a fugitive. If the "mere absence" theory were correct, the Supreme Court would have held that Degen was a fugitive.

7

points out that the government has not argued in its motion to strike that the Defendant meets the common law definition of a 'fugitive.' ").

The fact that the Government has not called Hijazi a fugitive should cause this Court to think twice before accepting the R&R's *sua sponte* fugitivity determination.  The Government is not in the habit of leaving powerful arguments on the table if they have any validity.  Thus, the Government's failure to call Hijazi a fugitive is telling and should give this Court pause.

## II.  EVEN IF HIJAZI WERE A FUGITIVE, THE "FUGITIVE DISENTITLEMENT DOCTRINE" WOULD NOT APPLY HERE.

Assuming *arguendo* that Hijazi is a fugitive—which, we repeat, he most certainly is not—the fugitive disentitlement doctrine still would not apply in this case.

### A.  The Supreme Court Has Never Applied Or Approved The Use Of The Fugitive Disentitlement Doctrine On These Facts.

The Supreme Court developed the fugitive disentitlement doctrine to deal with a very specific situation:  the circumstance in which a criminal defendant, after his trial and conviction, absconds from custody while his appeal is pending. The Supreme Court laid down the rule that a court could dismiss the appeal of such a fugitive as a matter of sound appellate practice.  The case before this Court is a long way from the circumstance that gave rise to the doctrine and is far removed from any application of the doctrine approved by the Supreme Court.

As the Supreme Court has explained, "[i]t has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is

a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez* v. *United States*, 507 U.S. 234, 239 (1993). Significantly, every case in which the Supreme Court has applied the fugitive disentitlement doctrine has involved someone who, after being tried by a jury and convicted of a crime, either escaped from prison or jumped bail. *See Estelle* v. *Dorrough*, 420 U.S. 534 (1975) (per curiam); *Molinaro* v. *New Jersey*, 396 U.S. 365 (1970) (per curiam); *Eisler* v. *United States*, 338 U.S. 189 (1949) (per curiam); *Allen* v. *Georgia*, 166 U.S. 138 (1897); *Bonahan* v. *Nebraska*, 125 U.S. 692 (1887); *Smith* v. *United States*, 94 U.S. 97 (1876). Two more recent cases in which the Court *declined* to apply the doctrine also involved a convict's post-conviction flight from actual or constructive custody. *See Ortega-Rodriguez*, 507 U.S. at 237 (defendant fled between conviction and sentencing); *United States* v. *Sharpe*, 470 U.S. 675, 681 n.2 (1985) (defendants became fugitives after grant of certiorari). The Court also refused to apply the doctrine in *Degen* v. *United States*, 517 U.S. 820 (1996), which involved someone, like Hijazi, who had been accused, but not convicted, of a crime.

This case is very different from the cases in which the Supreme Court has applied the fugitive disentitlement doctrine. Hijazi has not been convicted of any crime. Indeed, he has not even been tried. And he has not escaped from prison, jumped bail, or otherwise absconded from custody. On the contrary, he presented himself to Kuwaiti authorities. Thus, there is no Supreme Court case that approves the application of the doctrine to someone in Hijazi's shoes. The closest case is *Degen*, in which the Court held that the District Court had erred in applying the

doctrine.  In sum, it is not at all clear from the Supreme Court's cases that the doctrine has any application to the facts and procedural posture of this case.  We contend that the doctrine does not apply here.

**B.  Ali Hijazi Is Merely Responding To Governmental Action.**

As the Seventh Circuit has explained, "the Supreme Court has determined that it will not apply the doctrine when the fugitive is responding to government action."  *$40,877.59 in U.S. Currency*, 32 F.3d at 1154 (citing *Sharpe*, 470 U.S. at 681 n.2).  In *Sharpe*, the Court refused to apply the fugitive disentitlement doctrine where the Government was the party that petitioned for certiorari, which, said the Court, is "very different" from "the situation in which a fugitive defendant is the party seeking review here."  470 U.S. at 681 n.2.

Here, Hijazi is "responding to government action."  The Government pressed charges and obtained an indictment.  Hijazi's motion to dismiss merely responds to that action.  Put another way, the fugitive disentitlement doctrine does not apply where the Government is the party seeking to change the legal *status quo* by obtaining a judgment of conviction from a criminal court or overturning the judgment of a lower court.  Hijazi is not seeking *to reverse* a judgment of criminal conviction, but only to maintain the *status quo* (*i.e.*, by avoiding the entry of a judgment).

**C.  Refusing To Rule On Hijazi's Motion To Dismiss Would Be
An Improper And Unjustified Use Of Inherent Power.**

The Supreme Court has explained that the fugitive disentitlement doctrine represents an exercise of a federal court's inherent powers.  *See Degen*, 517

U.S. at 823.  The Court has also explained that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44 (1991).  *See Degen*, 517 U.S. at 823-824 (use of inherent powers must "be a reasonable response to the problems and needs that provoke it").  Moreover, it is well established that a court's use of inherent power "is invalid if it conflicts with constitutional or statutory provisions."  *Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 254 (1988) (quoting *Thomas* v. *Arn*, 474 U.S. 140, 148 (1985)).

Like any defendant in the American criminal justice system, Hijazi is presumed innocent and has a right to offer a defense.  Hijazi has raised the defense that this Court lacks jurisdiction (as he is expressly permitted to do, *see* Fed. R. Crim P. 12(b)(2), (b)(3)(B)), and if he is correct, the indictment should be dismissed.  As an aspect of a court's inherent power, the fugitive disentitlement doctrine cannot properly be applied so as to permit a court to refuse to rule on a defendant's jurisdictional defense.  *Cf. Degen*, 517 U.S. at 825 (concluding that application of the fugitive disentitlement doctrine by the courts below was "unjustified").

## III.   THIS COURT LACKS AUTHORITY TO REFUSE TO RULE ON HIJAZI'S MOTION TO DISMISS.

Everyone—Hijazi, the Government, and Magistrate Judge Gorman—agrees that this Court has discretion to decide Hijazi's Motion to Dismiss.  But *refusing to decide* that motion would be a clear-cut abuse of discretion.  In addition, the "good cause" that is required for this Court to abstain from ruling upon Hijazi's motion is lacking.

11

The Federal Rules of Criminal Procedure give Hijazi the right to raise jurisdictional and constitutional objections to the indictment in pretrial motions. *See* Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."); *United States* v. *Phillips*, 367 F.3d 846, 855 (9th Cir.) ("Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to contest jurisdiction in a pretrial motion to dismiss."), *cert. denied*, 125 S. Ct. 479 (2004). Federal courts have a duty to rule on all such motions forthwith; a court cannot delay decision absent good cause. *See* Fed. R. Crim. P. 12(d) ("The court *must decide* every pretrial motion before trial unless it finds good cause to defer a ruling.") (emphasis added). Indeed, the Federal Rules evince a strong policy favoring the filing of pretrial motions and the prompt resolution of such motions by judges. *See United States* v. *Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997) ("Rule 12 was written to encourage the making of motions prior to trial" and "advis[es] courts to defer rulings on pretrial motions only for good cause") (citing Advisory Committee Notes to 1975 Amendments to Rule 12); *United States* v. *Jones*, 542 F.2d 661, 664 n.4 (6th Cir. 1976) ("The House Judiciary Committee in its notes on the 1975 amendments to Rule 12(e) declared that district courts should rarely defer ruling on pretrial motions."). In this case, there is no good cause for refusing to rule on Hijazi's Motion to Dismiss.

A court's duty to rule on a pretrial motion is especially clear where, as here, the motion raises a pure legal issue. *See Phillips*, 367 F.3d at 855 (district court "had to decide" defendant's pretrial motion to dismiss for lack of jurisdiction

because court was "faced with a pure issue of law" and "no good cause existed to defer its ruling until trial") (citing, *inter alia*, Rules 12(b)(2) and 12(d)); *Jones*, 542 F.2d at 664 ("District courts are directed to dispose of all motions before trial if they are capable of determination without trial of the general issue. Generally, motions are capable of determination before trial if they raise questions of law rather than fact.") (citing Rule 12(b); footnote omitted).

The R&R relies heavily upon Justice Douglas' action as Circuit Justice on a stay application in *Hughes* v. *Thompson*, 415 U.S. 1301 (1974). But that case actually cuts in favor of Hijazi's position. In *Hughes*, Justice Douglas concluded that a District Court "certainly has the power" to rule on a pre-arraignment challenge to the sufficiency of an indictment. *Id.* at 1302. And he emphasized that in some cases ruling on such a challenge prior to arraignment "may be important to prevent harassment or the use of other unconstitutional procedures against an accused." *Id.* This is just such a case. Because this Court lacks jurisdiction over Hijazi, as a ruling on his Motion to Dismiss would confirm, obtaining a ruling on his motion is necessary to end the Government's harassment of Hijazi through this unconstitutional prosecution.

Furthermore, in citing *Hughes* for the proposition that ruling on a pre-arraignment challenge to an indictment is discretionary, the R&R fails to mention what happened after Justice Douglas issued his opinion:

> Exercising the power which Justice Douglas had declared
> it to possess, the district court considered the validity
> of the indictment, found it to be insufficient on its face,
> and dismissed it, although the court had not acquired

13

> jurisdiction of the person of the defendant (who may
> have remained outside the United States while these
> proceedings were taking place).

*United States* v. *Lockwood*, 382 F. Supp. 1111, 1116-17 (E.D.N.Y. 1974) (Weinstein,

J.) (citing subsequent proceedings in *United States* v. *Hughes*, No. LV 2843 BRT

(D. Nev. 1974)).  Thus, the *Hughes* litigation actually supports Hijazi's position that

this Court should proceed to rule on the Motion to Dismiss. 3/

The Rules of Criminal Procedure do not require Hijazi to be present for

the Court to rule on his Motion to Dismiss.  *See* Fed. R. Crim. P. 43(b)(3) (defendant

need not be present when "[t]he proceeding involves only a conference or hearing on

a question of law"); *see also* Fed. R. Crim. P. 43(a) (identifying when a defendant's

presence is required).  Nor does the Constitution so require.  *See Lockwood*, 382 F.

Supp. at 1115, 1117 ("The rules against trials *in absentia* were designed to protect

the defendant's, not the government's, rights. * * * No constitutional inhibition

against court action to determine the validity of a criminal charge absent a

defendant was inserted into our Constitution by its draftsmen").  Hijazi should not

be required to travel to the United States to seek dismissal of the indictment

because all of the conduct of which Hijazi was accused occurred outside of the

United States.  The Government alleges that Hijazi violated the criminal laws of

this country without ever setting foot outside of Kuwait.  If the Government can

---

3/     Finally, Justice Douglas' opinion in *Hughes* was issued prior to, and hence
does not take into account, the 1975 amendments to Rule 12, which established a
strong policy in favor of the making of pretrial motions and the resolution of such
motions by courts without delay.

assert extraterritorial jurisdiction over Hijazi, Hijazi ought to be allowed to raise an extraterritorial defense. 4/

The only conceivable basis on which the Court might properly exercise discretion to decline to rule on Hijazi's motion is that he is a fugitive. But as explained above, Hijazi is not a fugitive in any way, shape, or form. His alleged criminal conduct occurred in Kuwait, not the United States. He did not flee from Kuwait, the United States, or from any place. He is not in hiding. He has not been tried by a jury or convicted of anything. And he did not escape from confinement or custody. On the contrary, he was taken into custody in Kuwait without resistance on his part. Even the Government cannot bring itself to call him a "fugitive." Hijazi simply is not a fugitive in any meaningful sense of the term. The fact that he has decided not to travel from his home in Kuwait to stand trial here does not turn him into a fugitive.

Finally, Hijazi ought to receive a judicial determination on his motion because he is a foreign citizen who has been haled into a court of a stranger sovereign half a world away from his home. *See United States* v. *Noriega*, 683 F. Supp. 1373, 1375 (S.D. Fla. 1988) (foreign defendant allowed to challenge indictment since it is "important that our frequent protestations about due process, presumptions of innocence and fair play be given meaning"). 5/ It would be wrong

---

4/      Hijazi did not have to be physically present in the United States for the Government to obtain an indictment from the grand jury. Why should he have to be present to argue that the indictment is defective?

5/      Requiring Hijazi to leave behind his home, family, and business in Kuwait so that he can travel thousands of miles to the United States—all to appear in a

to force a foreign citizen, against whom nothing has been proven in court, to remain under indictment in this country without a determination whether the Court has jurisdiction or whether the prosecution is constitutional.  As the court said in the *Noriega* case:

> Presumably the factual and legal bases for the indictment were considered by the Justice Department to be entirely adequate when the indictment was returned. * * * If the charge is to stand in the records of this court with the implications which flow from an unanswered indictment, the Government should be quite willing to support its position and disavow any idea that the continuation of a possibly defective indictment should remain outstanding until the defendant appears with his attorney to demonstrate such a defect.

*Id*.  *See also Lockwood*, 382 F. Supp. at 1118 ("The court has an interest in clearing its docket of invalid indictments.").

## IV.  THE RELIANCE IN THE REPORT AND RECOMMENDATION UPON THE NOTION OF "MUTUALITY" IS MISPLACED.

The R&R relies heavily upon the idea of "mutuality"—*i.e.*, the notion that a court should not entertain the motion of a litigant beyond the court's jurisdiction where the litigant would benefit from a favorable ruling but would not be burdened by an adverse ruling.  *See* R&R at 4-5.  The R&R fails to detect "even the faintest whiff of mutuality."  *Id*. at 5.  The R&R is quite wrong about that.  In

---

foreign court that he believes lacks jurisdiction—would impose an undue burden upon him.  *See United States* v. *Golden*, 239 F.2d 877, 880 (2d Cir. 1956) (Frank, J., concurring) (rejecting the view that "a defendant must incur the expense of a many-thousand-mile journey to submit himself to the jurisdiction of the court, in order to have an indictment quashed").

fact, a ruling adverse to Hijazi on his Motion to Dismiss might well carry very significant consequences for him.

Because there is no extradition treaty between the United States and Kuwait, whether Hijazi will be extradited to the United States to face criminal charges here is, as a practical matter, subject to the discretion of Kuwaiti authorities. 6/  Hijazi has argued to Kuwaiti officials that he should not be extradited because this Court lacks jurisdiction over him and pointed in support of that argument to his pending Motion to Dismiss.  Thus far, the Kuwaiti authorities seem to have accepted Hijazi's position.  But a cogent opinion rejecting Hijazi's jurisdictional objection might well cause the Kuwaitis to change their minds—in which case Hijazi would soon find himself before this Court.  In short, Hijazi does run a risk by requesting a ruling on the Motion to Dismiss.  But he believes that a ruling on the motion is worth the risk.

In any event, for all of the reasons discussed above, "mutuality" is neither a sufficient or free-standing basis for a court to refuse to rule on a motion to dismiss an indictment filed by a presumed-innocent foreign national living overseas who is not a fugitive.

## V.    HIJAZI HAS NOT SUBMITTED TO THIS COURT'S JURISDICTION.

The R&R states that "[c]onsidering that defendant entered into a business relationship with the United States government, it would not appear to be

---

6/     The fact that there is no treaty in effect between the two nations has not deterred the American prosecutors from trying to convince Kuwaiti officials to extradite Hijazi to the United States.

a stretch to argue that he submitted to this court's jurisdiction . . . ."  R&R at 5.
This statement is dead wrong, both factually and legally.  Let's be clear:  Hijazi
*never* "entered into a business relationship" with the U.S. government.  The Kuwaiti
company of which he is the managing partner 7/ executed a subcontract with
Kellogg Brown & Root ("KBR")—not the U.S. government.  Thus, KBR—not Hijazi
or even La Nouvelle—is the party that "entered into a business relationship" with
the U.S. government.  La Nouvelle's dealings were exclusively with KBR. 8/

   Given that the factual premise of the R&R's statement is wrong, the
R&R's view that it "would not appear to be a stretch to argue" that Hijazi submitted
to the jurisdiction of this Court turns out to be quite a stretch indeed.  Hijazi has
never consented to the jurisdiction of this Court.  Indeed, the fundamental
contention of his Motion to Dismiss is that this Court *lacks* jurisdiction.

   The R&R cites no legal authority, or anything at all, for the proposition
that Hijazi has "submitted to this court's jurisdiction."  R&R at 5.   In any event,
"no action of the parties can confer subject-matter jurisdiction upon a federal court.
Thus, the consent of the parties is irrelevant."  *Insurance Corp. of Ireland, Ltd.* v.
*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  *See also Pennsylvania*
v. *Union Gas Co.*, 491 U.S. 1, 26 (1989) (Stevens, J., concurring) ("[T]he cases are
legion holding that a party may not waive a defect in subject-matter jurisdiction or

---

7/ La Nouvelle General Trading & Contracting Co.

8/ Finally, it should be recognized that Ali Hijazi himself has never executed a
contract in his personal capacity with the U.S. government *or* KBR.  It would be one
thing to say that La Nouvelle submitted to jurisdiction based upon its subcontractor
status.  It is quite something else to say that Hijazi himself did so.

invoke federal jurisdiction simply by consent."); *Reale Int'l, Inc.* v. *Federal Republic of Nigeria*, 647 F.2d 330, 331 (2d Cir. 1981) ("Graven in stone is the maxim that parties cannot confer jurisdiction on a federal court by consent or stipulation.").

Nor has the R&R come even remotely close to demonstrating that Hijazi has by deliberately waived his right to object on jurisdictional and constitutional grounds. *See United States* v. *Olano*, 507 U.S. 725, 733 (1993) ("waiver is the intentional relinquishment or abandonment of a known right") (quotation marks omitted); *see also College Savings Bank* v. *Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) ("Courts indulge every reasonable presumption against waiver of fundamental constitutional rights.") (quotation marks and brackets omitted).

## VI.    THE PRECEDENTS CITED IN THE R&R ARE INAPPOSITE.

Only two of the cases cited in the R&R involved foreign defendants. *See United States* v. *Oliveri*, 190 F. Supp. 2d 933 (S.D. Tex. 2001), and *United States* v. *Eagleson*, 874 F. Supp. 27 (D. Mass. 1994).  Neither of those cases, however, supports the striking of Hijazi's Motion to Dismiss. 9/

---

9/      The other cases cited in the R&R lend no support to the R&R.  In *United States* v. *Shapiro*, 391 F. Supp. 689 (S.D.N.Y. 1975), the court decided to rule on the motion to dismiss an indictment filed by a U.S. citizen who went to Canada to avoid the draft.  The court in *United States* v. *Delagarza-Villarreal*, 141 F.3d 133 (5th Cir. 1997), likewise declined to apply the fugitive disentitlement doctrine.  In *United States* v. *Shelton*, 482 F.2d 848 (5th Cir.) (per curiam), *cert. denied*, 414 U.S. 1075 (1973), the defendant escaped from custody while the jury was deliberating and remained at large during the appellate process.  In *Johnson* v. *Laird*, 432 F.2d 77 (9th Cir. 1970), a U.S. soldier went AWOL during the appeal of his own habeas corpus action.  And in *Dawkins* v. *Mitchell*, 437 F.2d 646 (D.C. Cir. 1970) (per curiam), the fugitive appellants initiated the lawsuit—they sued to enjoin the

19

*Oliveri* involved facts very different from this case.  In *Oliveri*, the defendant, an Italian citizen, was served with a grand jury subpoena while he was in Houston, Texas on business.  After he failed to appear before the grand jury, he was indicted for contempt of court.  Applying the fugitive disentitlement doctrine, the court held that the defendant "is in fact a 'fugitive.' "  *Id.* at 936.  The court said that "Oliveri is aware of the charges pending against him in this district and is purposefully absenting himself from the United States," even though "Oliveri apparently desires to conduct business in this country."  *Id.*

There are four obvious and major differences between *Oliveri* and this case.  *First*, the court held that Oliveri was a fugitive; as explained above, Hijazi is not a fugitive.  *Second*, Oliveri was "purposefully absenting" himself from the United States.  Oliveri wanted to return to the United States to conduct more business.  Thus, he was staying away from the United States because of the indictment.  Not so with Hijazi.  He does not come to this country to do business. Indeed, he has visited the United States only once in his life for a few days in 1993. Thus, Hijazi is not "absenting" himself from the United States.  One cannot be "absent" from a place where one would not normally be.  *See United States* v. *Islip*, 18 F. Supp. 2d 1047, 1069 (Ct. Int'l Trade 1998) ("To use an everyday analogy, one is not 'absent' from a class in which one was never enrolled.").  *Third*, Oliveri was served with a grand jury subpoena while he was in the United States on a voluntary basis to conduct business.  He then failed to appear before the grand jury.  Thus,

---

enforcement of a warrant—and they were clearly fugitives; indeed they had "double and triple fugitive status."  *Id.* at 647.

Oliveri by his own conduct brought himself within the jurisdiction of the court.  In contrast, Hijazi has never submitted to the jurisdiction of the court.  *Fourth*, Oliveri committed his crime within the jurisdiction of the United States.  Hijazi's alleged conduct occurred entirely overseas.

The other case involving a foreign defendant, *Eagleson*, is also very different from this case.  *First*, *Eagleson* did not involve a motion to dismiss an indictment.  Rather, Eagleson sought to vacate an *ex parte* restraining order issued under 18 U.S.C. §1963 that prevented him from transferring or disposing of certain assets.  *Second*, the defendant in that case was a fugitive, *see* 874 F. Supp. at 29 ("Eagleson is a fugitive"); Hijazi is not.  *Third*, unlike Hijazi, Eagleson did "not claim[ ] a deprivation of his constitutional rights."  *Id*. at 30-31.  *Fourth*, the court questioned whether *any* defendant has a right to challenge such an *ex parte* restraining order and said that this factor "weighs heavily against granting a fugitive such an opportunity."  *Id*. at 31.  Finally, the *Eagleson* opinion does not disclose whether Eagleson's alleged crime occurred in the United States or abroad. 10/

---

10/    Of course, this Court is not bound to follow *Oliveri* or *Eagleson*, neither of which was subjected to appellate review.

## CONCLUSION

For the foregoing reasons, as well as those stated in Hijazi's Motion to Dismiss, his supporting legal memorandum, and his Opposition to the Motion to Strike, the Court should (1) reject the Magistrate Judge's recommendation that the Motion to Strike be allowed and the Motion to Dismiss be stricken; (2) deny the Motion to Strike; and (3) grant the Motion to Dismiss.

Respectfully submitted,


s/ H. Christopher Bartolomucci
Ty Cobb
H. Christopher Bartolomucci
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone:  (202) 637-5600
Fax:  (202) 637-5900
E-mail:  tcobb@hhlaw.com
E-mail:  hcbartolomucci@hhlaw.com

Dated:  July 1, 2005                    *Counsel for Defendant Ali Hijazi*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to CDIL-LR 7.1(B)(4)(c), I hereby certify that the foregoing

Defendant Ali Hijazi's Objections to Report and Recommendation complies with the

type volume limitation of CDIL-LR 7.1(B)(4)(b)(1) and contains 5,916 words and

35,639 characters.


<u>s/ H. Christopher Bartolomucci      </u>
H. Christopher Bartolomucci

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2005, I electronically filed the foregoing

Defendant Ali Hijazi's Objections to Report and Recommendation with the Clerk of

the Court using the CM/ECF system which will send notification of the filing to:

Greggory R. Walters
Assistant United States Attorney
One Technology Plaza
211 Fulton Street, Suite 400
Peoria, Illinois 61602

*Counsel for Plaintiff*

John Scott Arthur
14315 South 108th Avenue
Orland Park, Illinois 60497

*Counsel for Defendant Jeff Alex Mazon*

s/ H. Christopher Bartolomucci
H. Christopher Bartolomucci