E-FILED
Wednesday, 13 July, 2005  04:08:13 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 05-40024-02 |
| ) | |
| **JEFF ALEX MAZON and ALI HIJAZI,** ) | |
| ) | |
| **Defendants,** ) | |

**THE UNITED STATES RESPONSE TO DEFENDANT
ALI HIJAZI'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION**

NOW COMES the United States of America, by its attorneys, Jan Paul Miller, United States Attorney for the Central District of Illinois, and Greggory R. Walters, Assistant United States Attorney, and for its response to Defendant Ali Hijazi's objections to the Report and Recommendation ("R&R") states as follows:

**Background**

On March 16, 2005, a grand jury sitting in the Central District of Illinois returned a 10-count indictment against the Defendants, Jeff Alex Mazon and Ali Hijazi, charging them with four counts of major fraud against the United States, 18 U.S.C. § 1031(a), and six counts of wire fraud, 18 U.S.C. § 1343.  Defendant Hijazi has neither been arrested in the United States nor arraigned on the superseding indictment.

Based on information received from INTERPOL, the Defendant was taken into custody in Kuwait on or about April 26, 2005, and then released on a 500 Kuwaiti Dinar bail.  Five hundred Kuwaiti Dinar equals approximately $1,700 U.S. Dollars.  The United State has no

extradition treaty with Kuwait. App. A to Motion to Strike. Consequently, the United States has no formal means of requesting the Defendant's presence in the U.S. for prosecution.

On May 20, 2005, the grand jury returned a superseding indictment against both Defendants. Like the original indictment, the superseding indictment charges both Defendants with four counts of major fraud against the United States and six counts of wire fraud.

Prior to the return of the Superseding Indictment, on May 3, 2005, Defendant Hijazi filed a motion to dismiss the indictment on the ground that this Court lacks subject matter jurisdiction, in spite of the fact the crimes, as alleged in the indictment, occurred, in part, within the United States. He further argues that the indictment should be dismissed because there is an insufficient nexus between himself and the United States whereby the exercise of jurisdiction over him would violate the Due Process Clause of the Fifth Amendment. On May 20, 2005, the United States filed a motion to strike the motion to dismiss. Following the return of the Superseding Indictment, the Defendant did not explicitly revive his motion to dismiss with respect to the superseding indictment, *see* CDIL-LR 7.1(E), although the Defendant's filings since the superseding indictment imply that he has revived his motion.[1]

On June 21, 2005, Magistrate Judge Gorman entered an R&R, recommending that the government's motion to strike be allowed and that the Defendant be allowed to re-raise the

---

[1] Based on the Defendant having responded to the government's motion to strike and now having filed an objection to the R&R, the government assumes the Defendant is reviving his motion to dismiss with respect to the superseding indictment. However, so that the record is clear for any review process that may take place upon this Court's resolution of the Defendant's objection, the government respectfully requests this Court require the Defendant to explicitly state that he is, in fact, reviving his motion to dismiss with respect to the superseding indictment. If the Defendant does revive his motion to dismiss, the government revives its motion to strike the motion to dismiss.

issues in his motion should he appear in this District for arraignment on the indictment.  R&R at 5.  In recommending that the motion to strike be granted, the Magistrate Judge concluded:

> [The Defendant] only wants this court to resolve the jurisdictional issue if he can be assured that the outcome is favorable to him.  There is nothing to indicate that an unfavorable decision would be followed by an appearance of the defendant to defend against the indictment.  There is not even the slightest whiff of mutuality.

*Id.*  On July 1, 2005, the Defendant filed a timely objection to the R&R.[2]

**Argument**

The Defendant devotes much of his brief to arguing why he is not a "fugitive" and, therefore, why the "fugitive disentitlement doctrine" does not apply to him.  His argument misses the point of the Magistrate Judge's R&R.  While the Magistrate Judge did explicitly find that the Defendant is a fugitive, the R&R, if adopted by this Court, "disentitles" the Defendant of nothing.  The Magistrate Judge does not recommend that the Defendant be forever barred from making his jurisdictional claim.  Instead, as argued by the government in its motion to strike, the Magistrate Judge recommends that this Court not entertain the motion to dismiss "until such time as [the Defendant] appears."  R&R at 5.

---

[2]In the "Background" section of the R&R, the Magistrate Judge accepted a number of alleged facts the Defendant asserted, without support, in his motion to dismiss: the Defendant has been to the U.S. once in 1993; he has never been to the State of Illinois; and he has never filed a tax return.  The government has no objection to this Court accepting these facts for purposes of ruling on the R&R.

However, as discussed in this brief, both the Magistrate Judge's and Hijazi's assertion that the alleged conduct charged in the Superseding Indictment took place in Kuwait is only partially correct.  Alleged conduct also took place in the United States.  *See* Superseding Indictment, ¶¶ 30-34, p. 11 (chart for counts 1 through 4), ¶ 2 (for counts 5 through 10), and pp. 13-14 (chart); *see also infra* at 9.

3

The Magistrate Judge's recommendation is based on the common sense conclusion that the Defendant's motion presents a "heads I win, tails you lose" scenario. A favorable ruling for the Defendant on his motion to dismiss would benefit him while an unfavorable ruling would not result in the Defendant's appearance before this Court. The lack of mutuality and policy considerations support this Court's adoption of the Magistrate Judge's recommendation to strike the motion to dismiss with leave to re-raise the issues in his motion should he ever appear in this jurisdiction on the Superseding Indictment.

**I.    The Magistrate Judge Properly Found "There Is Not Even The Slightest Whiff Of Mutuality"**

The Magistrate found, and the parties agree, that it is within this Court's sound discretion whether or not to entertain a pre-arraignment motion to dismiss. *See* R&R at 3; Motion to Strike at 2; Def.Obj. at 11; *see also Hughes v. Thompson*, 415 U.S. 1301, 1302 (1974).

In recommending the government's motion to strike be granted and this Court exercise its discretion not to entertain the motion prior to arraignment, the Magistrate Judge relied on the lack of mutuality in this case. The Magistrate Judge properly recognized that a ruling on the motion to dismiss that is favorable to the Defendant would benefit him greatly while an adverse ruling would have no effect because there is nothing to indicate the Defendant would ever appear in such circumstance. R&R at 5.

In his objection to the R&R, the Defendant asserts that the Magistrate Judge is "quite wrong" about the nonexistence of mutuality. Def.Obj. at 16. The Defendant then argues, for the very first time, that as of now the Kuwaiti authorities seem to have accepted the Defendant's argument that this Court lacks jurisdiction over him but that a "cogent opinion" from this Court rejecting his jurisdictional argument "might well cause" the Kuwaiti authorities to change their

minds and result in their rendering the Defendant to U.S. authorities for prosecution. Def.Obj. at 17. The Defendant never raised his "might well cause" argument before the Magistrate Judge in responding to motion to strike despite the government having based much of its motion to strike on the complete lack of mutuality. Like prosecutors, defense counsel "is not in the habit of leaving powerful arguments on the table if they have any validity." Def.Obj. at 8. Defendant's omission of this argument from its response to the motion to strike is telling. The Defendant, recognizing that mutuality was a critical factor in the Magistrate Judge's recommendation, is now attempting to provide this Court with the "whiff" of mutuality the Magistrate Judge recognized is completely lacking in this case. Defendant's unsupported assertion that "a cogent opinion rejecting Hijazi's jurisdictional issue might well cause the Kuwaitis to change their minds" hardly increases this Court's confidence that it would soon find the Defendant before this Court upon an unfavorable ruling.

Noticeably absent from the Defendant's objection to the R&R is any representation that, upon an unfavorable ruling from this Court, the Defendant would not further contest extradition or argue before the Kuwaiti authorities that this Court's ruling was incorrect. Given the Defendant's extradition to the United States is subject to the discretion of the Kuwaiti authorities, *see* Def.Obj. at 17, and that a ruling from this court only "might well cause" the Kuwait authorities to render him to this Court, it is apparent that the Magistrate Judge's conclusion that there is not the slightest whiff of mutuality is correct.

The Magistrate Judge's conclusion that mutuality is completely lacking is correct irrespective of the Defendant's fugitive status. In determining that there is a lack of mutuality, the Magistrate Judge relied upon the district court case of *United States v. Oliveri*, 190 F. Supp.

2d 933 (S.D. Tex. 2001) concerning the lack of mutuality support this Court's adoption of the R&R. In *Oliveri*, the defendant, a citizen of Italy, was served with a grand jury subpoena while in the United States on business. When the defendant failed to appear before the grand jury, he was indicted for criminal contempt of court. At the time of his indictment, the defendant was not in the United States and he remained outside the United States after the indictment. *See id.* at 934.

Prior to the arraignment on the contempt charge, the defendant filed a motion to dismiss the indictment. The district court, recognizing it had the discretion to rule on the sufficiency of the indictment prior to arraignment, declined to reach the merits of the motion and denied it. *See id.* at 935-36. In declining to reach the merits of the defendant's pre-arraignment motion, the district court stated:

> It appears that [the defendant] is attempting to obtain the benefit of a favorable ruling from this court without risking the burdens that may flow from an adverse ruling. If this court were to decide, on the merits, not to dismiss the indictment against [the defendant], such a ruling would have no effect on [the defendant] because he could remain outside the jurisdiction of this court. On the other hand, if the court were to dismiss the indictment against [the defendant], he would obtain a significant benefit from this court at no risk to him. Absent some special circumstance, or overriding policy concern, this court refuses to bestow such a benefit on [the defendant].

*Id.* at 936.

The concerns raised by the district court in *Oliveri* apply equally whether a defendant is a fugitive who allegedly defrauds the United States while physically in the U.S. and then leaves or is a foreigner who defrauds the United States while corporeally outside the U.S. Absent mutuality, an unfavorable ruling on a pre-arraignment motion to dismiss presents no risk to

either type of defendant. Like the defendant in *Oliveri*, Defendant Hijazi is attempting to obtain from this Court the benefit of a favorable ruling without risking the burden of criminal prosecution that would flow from denial of his motion. Defendant's assertion that the Kuwaiti authorities "might" render him to the United States if this Court were to deny his motion to dismiss falls well short of providing any "indicat[ion] that an unfavorable decision would be followed by an appearance of the defendant to defend against the indictment." R&R at 5.

The Defendant argues that the lack of mutuality is not a sufficient basis to refuse to rule on the motion at this time. Def.Obj. at 11. The government disagrees. The lack of mutuality, by itself, is more than sufficient to support this Court's exercising its discretion not to entertain the motion to dismiss prior to the Defendant's arraignment. The striking of the motion to dismiss with leave to re-file upon arraignment is clearly within the range of options from which one would expect a reasonable trial judge to select where mutuality is nonexistent. *See Liu v. Price Waterhouse, L.L.P.,* 302 F.3d 749, 754 (7th Cir. 2002) (discussing the abuse of discretion standard, stating that the court will not second-guess the decision of a trial judge if it is within the range of options from which one would expect a reasonable trial judge to select).

## II.   There Are Other Policy Reasons Supporting This Court's Discretion To Entertain The Defendant's Pre-Arraignment Motion To Dismiss

The spectacle of the Defendant attacking the indictment *in absentia* without any guarantee of his submission to this Court's jurisdiction in the event of an unfavorable ruling is only magnified in the context of this case. He is charged with defrauding the United States government under a subcontract that was awarded under a government prime contract. Superseding Indictment, ¶¶ 1, 15, 35 (counts 1 through 4), and ¶ 3 (counts 5 through 10). The policy implications of allowing pre-arraignment attacks by foreign nationals who are charged

with defrauding the United States under subcontracts awarded pursuant to a government prime contract could be far reaching.  Such subcontractors could seek the benefit of government subcontracting and, if charged with defrauding the United States under those subcontracts, could remain abroad attempting to poke holes in the government's case with little fear of having to submit to the authority of a district court upon unfavorable rulings.  This is especially true in situations where, as in this case, there is no extradition treaty with the country in which the defendant is located. The entertaining of such pre-arraignment motions would only embolden those who seek to defraud our government through abuses of government contracts by providing them with an additional layer of protection – a layer of protection this court is not required as a matter of law to provide.  Respectfully, this Court would establish a bad public policy if it were to exercise its discretion to entertain a pre-arraignment motion to dismiss under the circumstances of this case.

### III.     Absent Mutuality, Defendant's Status As A Non-Resident Alien Does Not Support This Court Exercising Its Discretion To Entertain The Motion To Dismiss

The Defendant argues in his objection, as he argued in his response to the motion to strike, that if the government can assert extraterritorial jurisdiction over him, he ought to be allowed to raise his extraterritorial jurisdiction claim from afar prior to arraignment.  Def.Obj. at 14-15 & n.4; Def.Resp.Mtn.Strike at 13.  The Defendant states that "[he] should not be required to travel to the United States to seek dismissal of the indictment because all of the conduct of which [he] is accused occurred outside the United States."  Def.Obj. at 14.

The Defendant's contention that all of the conduct of which he is accused occurred outside the United States is factually and legally inaccurate.  The Superseding Indictment

explicitly alleges acts of Jeff Mazon, the co-defendant, in furtherance of the scheme to defraud that occurred while Mazon was physically in the United States. Superseding Indictment, ¶¶ 31, 33 (counts 1 through 4), ¶ 2 (counts 5 through 10). For purposes of a scheme to defraud, the acts of Mazon in furtherance of the scheme are no different than if Defendant Hijazi had performed them himself. *See, e.g., United States v. Adeniji*, 221 F.3d 1020, 1027 (7th Cir. 2000) (evidence of one participant's actions in furtherance of a scheme to defraud is admissible against other participants in that scheme, just as in a conspiracy case).

Moreover, the Defendant's argument that he should be allowed to raise *in absentia* his extraterritorial jurisdiction argument assumes the correctness of his argument that this is an "extraterritorial jurisdiction" case. The government does not concede that this is an extraterritorial jurisdiction case and will address this issue at the appropriate time as determined by this Court. However, assuming for the sake of argument the Defendant's presupposition is correct, his status as a non-resident alien outside the United States cannot be viewed in a vacuum. Instead, his status as a non-resident alien, must be considered in light of: (1) his current presence in a country with no extradition treaty with the United States, *see* App. A to Motion to Strike; and (2) the complete lack of mutuality as found by the Magistrate Judge. If this case presented a situation where this Court could have any certainty that the Defendant would ever appear upon the entry of an unfavorable order, the Defendant's argument that as a foreigner he should be allowed to be heard *in absentia* on his motion to dismiss might be more palatable. Given the lack of such certainty, his motion to dismiss presents a "heads I win, tails you lose" scenario.

The Defendant relies upon the district court case of *United States v. Noriega*, 683 F. Supp. 1373 (S.D. Fla. 1988), to support his position that as a foreign defendant he should be allowed to challenge the superseding indictment *in absentia*. In *Noriega*, the district court recognized there was little probability the defendant would be brought to the United States to answer the charges against him in the event of an unfavorable ruling. The court nevertheless exercised its discretion by allowing the defendant leave to file a pre-arraignment motion to dismiss. In that case, the defendant, General Manuel Noriega of Panama, was indicted for conspiracy to import cocaine and materials used to import cocaine into the United States. *Id.* at 1373. At the time of the indictment, Noriega was a resident of Panama. The defendant sought leave of the court to file a motion to dismiss the indictment prior to arraignment and while he remained outside the United States, and the court granted leave to file the motion. *Id.* at 1373-74.[3] In granting leave to file the motion, the district court determined that the issues to be raised were issues of first impression and concerned delicate matters based on the defendant's unique status as a *de facto* head of state. *See id.* Additionally, the court believed the case was "fraught with political overtones." *See id.*

This case is not fraught with the political overtones that accompanied the indictment of the *de facto* leader of Panama, General Noriega. Moreover, Defendant Hijazi's motion to dismiss does not raise the sensitive issues of first impression raised by Noriega in his motion to dismiss, which included the issue of whether "the extraterritorial application of the criminal law [was] unreasonable under the unique facts of [that] case, and cannot be relied upon to secure

---

[3] The motion was later denied. *See generally United States v. Noriega*, 746 F. Supp. 1506 (S.D. Fla. 1990).

jurisdiction over a leader of a sovereign nation who has personally performed no illegal acts within the borders of the United States." *United States v. Noriega*, 746 F. Supp. 1506, 1510 (S.D. Fla. 1990). While Defendant Hijazi raises the issue of the alleged extraterritorial application of United States law, this alleged jurisdictional issue is not intertwined with the sensitive issues of head of state immunity, the act of state doctrine, or diplomatic immunity as it was in *Noriega*. *See id.* at 1519-24.

### IV.     The Defendant's "Fugitive Disentitlement" Argument Is Misplaced

The Defendant devotes much of his objection to arguing why he is not a fugitive and, therefore, why application of the fugitive disentitlement doctrine to him would be erroneous. Def.Obj. at 2-11. The problem with his argument is that the adoption of the R&R would not disentitle the Defendant of anything.

To be clear, the government is not arguing that the Defendant is a fugitive for purposes of the fugitive disentitlement doctrine. *See United States v. $40,877.59 in U.S. Currency*, 32 F.3d 1151, 1156 (7th Cir. 1994) ("The Supreme Court has held that to be a fugitive, the defendant must intentionally take a material step towards the commission of the crime while in the state and then absent himself from that state. . . . In addition, this court has held that to be a fugitive, a defendant must flee the state with the intent to avoid prosecution.") (citations omitted); *but see Sapoundjiev v. Ashcroft*, 376 F.3d 727, 729 & n. (7th Cir. 2004) ("None of our fugitive-disentitlement decisions turns on proof that the missing person is in a different state, and it would not be sound to adopt such a requirement."). The Magistrate Judge's recommendation to strike the motion to dismiss, however, does not turn on the Defendant's fugitive status since the R&R does not recommend the Defendant be forever barred from raising his jurisdictional issues.

In recommending the Defendant's motion be stricken, the Magistrate Judge clearly states that the "Defendant may re-raise these issues should he appear in this jurisdiction for arraignment on indictment." R&R at 5. Accordingly, the Defendant's argument that "the fugitive disentitlement doctrine cannot properly be applied so as to permit a court to refuse to rule on a defendant's jurisdictional defenses" raises a non-issue. Def.Obj. at 11. The Magistrate Judge's recommendation to allow the Defendant to re-raise his motion upon appearance before this Court is not a "disentitlement" or a refusal to ever entertain the Defendant's arguments.

The striking of the Defendant's motion, with leave to resubmit his motion upon his appearance in this case, is much different than the entry of a summary judgment against an absent claimant in a civil forfeiture action, as condemned by the Supreme Court in *Degen v. United States*, 517 U.S. 820 (1996). In that case, Degen had duel U.S. and Swiss citizenship, and moved to Switzerland in 1988. In 1989, a U.S. grand jury indicted Degen for drug distribution, money laundering, and related crimes. The government also commenced a civil forfeiture action against property located in the U.S. that allegedly purchased with Degen's illicit proceeds. Degen could not be extradited from Switzerland and did not return to the U.S. to face the criminal charges. While in Switzerland, Degen attempted to contest the forfeiture proceedings by filing an answer where he contended that the action was time barred and was improperly based on retroactive application of the forfeiture laws. The government moved to strike Degen's claims based on the fugitive disentitlement doctrine. The district court granted the motion and entered summary judgment in favor the government. *Id.* at 821-22.

Without reaching the issue of whether Degen was a fugitive, the Court acknowledged the "disquiet at the spectacle of a criminal defendant reposing in Switzerland, beyond the reach of

our criminal courts, while at the same time mailing papers to the court in a related civil action and expecting them to be honored." *Id.* at 828.  However, the Court held that the striking Degen's filings and granting of judgment against him was an excessive response by the district court. *Id.* at 829.

Like the Supreme Court in *Degen*, the Magistrate Judge acknowledged the disquiet spectacle of Hijazi reposing in Kuwait beyond the reach of our criminal courts while filing a motion and expecting it to be honored prior to his arraignment.  However, whereas the district court's entry of judgment against the claimant in *Degen* disentitled Degen of his claim in the civil forfeiture action, the Magistrate Judge's R&R does not forever bar the Defendant from making his jurisdictional claim or otherwise disentitle the Defendant of any defense in this case. Similarly, because the Defendant is not disentitled from raising the claims in his motion to dismiss, his argument that the fugitive disentitlement doctrine does not apply where a fugitive responds to government action is without merit.  *See* Def.Obj. at 10.

In summary, the Magistrate Judge's recommendation that the Defendant be allowed to file his pretrial motions upon his appearance in this District does not amount to a "disentitlement."  Consequently, whether or not the Magistrate Judge properly determined that the Defendant is a fugitive is a non-issue.  This Court need not reach the "fugitive" issue to conclude that there is a lack of mutuality and that the Defendant is disentitled of nothing if the R&R were adopted.

V.  **The Magistrate Judge Correctly Found That None Of The Authorities The Defendant Cites Require That The Jurisdictional Issue Must Be Resolved Before The Defendant Is Arraigned**

In the R&R, the Magistrate Judge found that "[n]one of the authorities cited by the defendant stand for the proposition that the jurisdictional issue *must* be resolved before the defendant is arraigned." R&R at 5 (emphasis in original). Although the Defendant acknowledges on the one hand that it is within this Court's discretion to entertain a pre-arraignment motion to dismiss, he asserts on the other that "this Court lacks authority to refuse to rule on Hijazi's motion to dismiss." Def.Obj. at 11. The Defendant's explicit acknowledgment of this Court's discretion belies his argument that this Court lacks the authority to decline to entertain the motion until the Defendant appears.

Defendant relies upon Rule 12 of the Federal Rules of Criminal Procedure in support of his argument that this Court lacks the authority to refuse to rule on the motion to dismiss. However, nothing in Rule 12 supports the Defendant's argument. Rule 12(d) states that "[t]he court must decide every pretrial motion *before trial* . . . ." (Emphasis added). The Magistrate Judge's recommendation to strike the motion to dismiss, with leave to re-raise the issues after arraignment, is not contrary to Rule 12(d) and clearly contemplates the resolution prior to trial of any motion the Defendant may file upon his arraignment in this District. Assuming the Defendant appears before this Court and files his motion to dismiss the Superseding Indictment, there is no doubt this Court would rule upon the motion without delay prior to trial. Rule 12 requires nothing more.

In summary, neither Rule 12 nor any of the cases the Defendant cites in Part III of his opposition support his assertion that this Court lacks the authority to refuse to entertain the

Defendant's motion prior to arraignment.  In fact, the Defendant's concession that this Court has the discretion to entertain or decline to entertain a pre-arraignment motion to dismiss proves false his statement that this Court lacks such authority.  *See* Def.Obj. at 11.

## Conclusion

For the foregoing reasons, the United States respectfully requests that this Court adopt the Report and Recommendation and that it strike the Defendant's motion to dismiss or otherwise deny the motion, with leave to re-urge his motion should the Defendant be arraigned in this District on the charges.  Alternatively, if this Court exercises its discretion to entertain the motion to dismiss prior to the Defendant's arraignment, the government respectfully requests 14 days from the entry date of this Court's order to respond to the motion to dismiss, or such other time as this Court permits.

Respectfully submitted,

UNITED STATES OF AMERICA

JAN PAUL MILLER
UNITED STATES ATTORNEY

By:   /s/ Greggory R. Walters
      Greggory R. Walters
      Assistant United States Attorney
      One Technology Plaza
      211 Fulton Street, Ste. 400
      Peoria, Illinois 61602
      Tel: (309) 671-7050
      Fax: (309) 671-7259
      E-mail: greggory.walters@usdoj.gov
      Ill. Reg. No. 6256826

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Mr. J. Scott Arthur
>*Counsel for Defendant Jeff Alex Mazon*
>
>and
>
>Mr. H. Christopher Bartolomucci
>*Counsel for Defendant Ali Hijazi*

>  /s/ Margo Scamp
>Legal Assistant