UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

|  |  |
|---|---|
| UNITED STATES, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-40024 |
| ALI HIJAZI, | ) |
| Defendant. | ) |

**DEFENDANT ALI HIJAZI'S OPPOSITION TO THE GOVERNMENT'S MOTION IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to CDIL-LR 7.1(B)(2), Defendant Ali Hijazi respectfully submits this opposition to the motion filed by the Government in response to Hijazi's motion to dismiss. *See* Government's Motion to Stay Ruling on Defendant Hijazi's Second Motion to Dismiss the Indictment and to Hold Motion in Abeyance Pending Arraignment (Doc. 136) ("Gov. Mot.").

## INTRODUCTION

The Government still refuses to engage in a serious discussion of the merits of the jurisdictional, constitutional, and international law arguments presented by Defendant in support of his motion to dismiss the current iteration of the indictment. Indeed, the Government refuses to discuss the merits of those arguments at all. For nearly three years, the Government has sought to dodge those arguments and has failed to respond to them. The Government's latest motion employs this same tactic yet again.

But not only has the Government failed to address the merits of Hijazi's motion to dismiss, it has failed to respond to Hijazi's explanation of the specific reasons why the Court should not hold Hijazi's motion to dismiss in abeyance. *See* Memorandum in Support of Defendant Ali Hijazi's Motion to Dismiss the Second Superseding Indictment (Doc. 133) ("Hijazi Mem.") at 32-42. Defendant anticipated that the Government would seek to avoid a ruling on his motion to dismiss and therefore included in his supporting memorandum a detailed argument that placing an indefinite hold on his motion to dismiss would impose a serious hardship on him, violate due process, and contravene the Court's duty to determine whether it has jurisdiction in this case. The Government's motion proceeds as if those arguments were never made.

The Government has also ignored Defendant's argument that the case should be dismissed for want of prosecution pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure. *See* Hijazi Mem. at 29-32. The thrust of that argument is that the case should be dismissed because (a) the Government has failed, for nearly three years and counting, to discharge its duty as prosecutor to bring this case to trial, and (b) due to the lack of an extradition treaty between the United States and Kuwait, as well as Kuwait's strong opposition to this prosecution, there is no reason to believe that the Government will be able to bring the matter to trial in the foreseeable future. The Government says not a word about Defendant's Rule 48(b) argument in its motion. Because it is a new argument, the Government's prior pleadings do not address it. And it is not the sort of argument that can be held in

abeyance:  It is simply no answer to a failure-to-prosecute argument to say that the Court should not rule on the argument until the Government gets around to prosecuting the case.

## ARGUMENT

On December 21, 2007, Defendant filed his motion to dismiss.  *See* Defendant Ali Hijazi's Motion to Dismiss the Second Superseding Indictment and Request for Oral Argument (Doc. 131) ("Hijazi Mot.").  This Court having granted his motion for leave to exceed the applicable word limit, Defendant filed in support of his motion a 42-page legal memorandum.  By Order dated January 3, 2008, this Court directed the Government to "file a brief in response" to Defendant's motion to dismiss.  Instead of filing a brief that responds to Hijazi's arguments, the Government on January 24, 2008, filed its motion, a meager 7-page document, less than half of which consists of argument.  The Government's motion asks this Court "to hold Hijazi's motion in abeyance pending his appearance before this Court" and "to stay any ruling" on Hijazi's motion.  Gov. Mot. at 1.  The Government's motion should be denied. 1/

1.  Before addressing what the Government says in its motion, it is appropriate to highlight what the Government does *not* say.  First, the Government does not dispute the facts set forth in Hijazi's motion and supporting memorandum.

---

1/    The Government's request for a "stay of any ruling" on Hijazi's motion to dismiss is both premature and unjustified.  A stay is a court order suspending the legally operative effect of a prior ruling.  Here, there is no ruling to be stayed.  And the Government has not ventured to explain why, if the Court were to grant Hijazi's motion to dismiss, such a ruling should be stayed.

3

*See* Hijazi Mot. at 1-4 (numbered paragraphs 1 through 24); Hijazi Mem. at 2-3. Second, the Government does not argue that Hijazi is a fugitive, a view previously rejected by this Court. *See* July 20, 2005 Order at 3. Third, the Government does not address the merits of the arguments advanced by Hijazi in support of his motion to dismiss, including his arguments based on the Extraterritoriality Canon, the Military Extraterritorial Jurisdiction Act, the Defense Cooperation Agreement between the United States and Kuwait, Section 403 of the Restatement of Foreign Relations Law, the Rule of Lenity, the Due Process Clause, and Rule 48(b). *See* Hijazi Mem. at 3-29. Fourth, the Government does not dispute that Hijazi's argument for dismissal is jurisdictional. *See* Gov. Mot. at 1 (recognizing that Hijazi seeks dismissal "on jurisdictional grounds"); *id*. at 4 (same). Fifth, the Government does not respond to Hijazi's specific, well-developed arguments against holding the motion to dismiss in abeyance. *See id*. at 32-42. Sixth, the Government does not oppose Hijazi's request for oral argument on his motion to dismiss. *See* Hijazi Mot. at 4-5. 2/

    2. In its July 20, 2005 Order, this Court decided to hold in abeyance Hijazi's first motion to dismiss. 3/ The Government urges the Court to do so the same to Hijazi's new motion. It argues that "the parties are in the same position they

---

2/    Defendant hereby requests oral argument on the Government's motion as well his own pending motion to dismiss. *See* CDIL-LR 7.1(A)(2). Defendant has already explained why oral argument is desirable. *See* Hijazi Mot. at 4-5.

3/    Although Hijazi has filed two motions to dismiss, the motion he filed on December 21, 2007, is the first and only such motion he has filed with respect to the Second Superseding Indictment.

4

occupied in 2005. Nothing has changed since the Court's 2005 order . . . ." Gov. Mot. at 4. The Government is wrong. Some 30 months, or two and a half years, have gone by since the Court's July 20, 2005 Order, and it is now clear that the Government will not be able to bring this case to trial in the foreseeable future, if ever.

Hijazi was indicted on March 16, 2005. He promptly moved to dismiss, but this Court in its July 20, 2005 Order ruled that his motion would be held abeyance. That ruling came only four months after Hijazi's indictment. Nothing in that Order suggests that the Court intended to hold Hijazi's jurisdictional, constitutional, and international law arguments for dismissal in abeyance in perpetuity. March 16, 2008, will mark the third anniversary of Hijazi's indictment. The passage of time has made clear that Hijazi will not be brought to trial anytime soon and most likely will never stand trial. The Government concedes that Hijazi "cannot be extradited or brought before this Court pursuant to any ordinary judicial process. As long as [Hijazi] remains in Kuwait, he is effectively beyond the jurisdiction of this Court." Gov. Mot. at 2-3. And it is the Government's duty to prosecute this case; Hijazi has "no duty to bring himself to trial." *Barker* v. *Wingo*, 407 U.S. 514, 527 (1972).

The Government's failure, for nearly three years, to bring Hijazi to trial is a material change from the circumstances of July 2005. The Government's failure to prosecute this case is a compelling reason to dismiss it pursuant to Rule 48(b). *See* Hijazi Mem. at 29-32; *see, e.g.*, *United States* v. *Rowbotham*, 430 F. Supp. 1254, 1257 (D. Mass. 1977) (dismissing indictment under Rule 48(b) where defendant was

5

in Canada, eight months had passed since his indictment, and there was "no prospect" that he would appear before the court "in the foreseeable future"). The Government's failure to prosecute the case is also a compelling reason to rule on Hijazi's other arguments. Because there is no prospect that Hijazi will stand trial in the foreseeable future, ruling on his motion to dismiss may be the only way to dispose of this case. Put another way, since the Government has no ability to discharge its prosecutorial duty to bring this case to trial, ruling on Hijazi's jurisdictional, constitutional, and international law arguments for dismissal makes much more sense than allowing this case to remain undecided on the Court's docket for another three (or another 30) years. *See United States* v. *Lockwood*, 382 F. Supp. 1111, 1118 (E.D.N.Y. 1974) ("The court has an interest in clearing its docket of invalid indictments").

    3. The Government asserts that Hijazi "has produced nothing new." Gov. Mot. at 6. Not so. Perhaps the Government did not carefully review Hijazi's motion and supporting memorandum. Although Hijazi's motion and memorandum include arguments that he made in 2005, those documents also contain a considerable amount of new material. The argument that the Military Extraterritorial Jurisdiction Act confirms that the charging statutes do not reach the conduct allegedly committed by Hijazi in Kuwait is new. *See* Hijazi Mem. at 15-17. The argument that the Court lacks jurisdiction because of the Defense Cooperation Agreement between the United States and Kuwait is new. *See id.* at 17-21. And the argument that the Court should dismiss the indictment under Rule 48(b) based

6

on the Government's failure to prosecute and inability to bring the case to trial is new. *See id.* at 29-32.

Hijazi also has presented new arguments why the Court should not hold the motion to dismiss in abeyance. To begin with, doing so would inflict serious hardship on Hijazi. Being under indictment for 34 months and counting has significantly affected his reputation, livelihood, freedom to travel, and family relationships. *See id.* at 32-33. Furthermore, placing an indefinite hold on Hijazi's motion to dismiss would violate fundamental notions of due process. *See id.* at 33-34. *Klopfer* v. *United States*, 386 U.S. 213 (1967), holds that it violates the Due Process Clause to leave an indictment pending against a defendant indefinitely. Thus, contrary to the Government's view, a court cannot postpone indefinitely a ruling on a motion to dismiss an indictment. Hijazi has also explained that federal courts have an unshakable duty to determine whether they have jurisdiction. *See* Hijazi Mem. at 35-38. Thus, it is not true Hijazi has "produced nothing new." Gov. Mot. at 6. What is true is that the Government has produced nothing in response to these new arguments.

4. The Government contends that "Defendant cites no authority suggesting that the jurisdictional issue *must* be resolved before the defendant is arraigned." Gov. Mot. at 6 (emphasis in original). In fact, Hijazi cited controlling authority for the proposition that a federal court's duty to verify its jurisdiction is a "threshold" requirement. *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). As the Seventh Circuit has stated: "The first duty of counsel is to make clear to the

court the basis of its jurisdiction as a federal court. The first duty of the court is to make sure that it exists." *Sadat* v. *Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980) (quotation marks omitted). *See* Hijazi Mem. at 35-36. Because verifying jurisdiction is a court's "first duty," it necessarily follows that a court must discharge that duty at the outset of a case. And where, as here, a party has raised strong arguments that the court lacks jurisdiction, the court's "first duty" necessarily encompasses a duty to rule upon those arguments. *See Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *Sadat*, 615 F.2d at 1188 ("[I]t has been the virtually universally accepted practice of the federal courts to permit any party to challenge, or, indeed, to raise sua sponte the subject matter jurisdiction of the court at any time and at any stage of the proceedings.").

    5. The Government resurrects its "mutuality" argument, *see* Gov. Mot. at 2, 5, but it ignores Hijazi's response to that anticipated argument, *see* Hijazi Mem. at 41-42. The concept of mutuality in litigation is not a free-standing basis for refusing to rule on constitutional and jurisdictional challenges to an indictment presented by a non-fugitive defendant. Criminal prosecutions are not about mutuality, and much that goes on in criminal litigation lacks any semblance of mutuality. When the Government prosecutes a defendant there is no mutuality. If the defendant is acquitted or otherwise exonerated, the Government does not have to compensate him for his loss of liberty, reputational injury, and defense costs. The Government does not even have to apologize. Nor is there any mutuality when a defendant

moves to dismiss an indictment. If the motion is granted the defendant avoids prosecution under that indictment; if the motion is denied the Government's position remains the same. The fact that Hijazi is overseas does not make his motion to dismiss any less "mutual" than an ordinary motion to dismiss. Nor is it clear why there must be "mutuality" for the Court to rule on Hijazi's motion. If this Court lacks jurisdiction, or if the assertion of jurisdiction would violate constitutional or international legal norms, the case should be dismissed, whether or not Hijazi's motion lacks "mutuality."

The Government's suggestion that the Court should refuse to rule on Hijazi's motion to dismiss because he is out of the country flies in the face of the Supreme Court's unanimous opinion in *Degen* v. *United States*, 517 U.S. 820 (1996). In that case, the Government indicted Brian Degen, a dual U.S.-Swiss citizen living in Switzerland, and also commenced a civil forfeiture action against his property in the United States. Like Hijazi, Degen could not be extradited to face the criminal charges. Remaining in Switzerland, Degen filed pleadings in the civil forfeiture action, arguing that the Government's claims were barred by the statute of limitations and based on an unlawful retroactive application of the forfeiture laws. The district court refused to consider these arguments. "The court held Degen was not entitled to be heard in the civil forfeiture action because he remained outside the country, unamenable to criminal prosecution." *Id*. at 822. The Supreme Court, however, held that Degen's absence did not justify the district court's refusal to hear his arguments. The Court agreed that "[t]here would be a measure of rough justice

in saying Degen must take the bitter with the sweet, and participate in the District Court either for all purposes or none," but it concluded that "the justice would be too rough" and "would be an excessive response to the concerns here advanced." *Id*. at 829. So too here, the Government's very similar argument, *i.e.*, that Hijazi must appear in the United States in order to challenge the indictment, cannot justify refusing to consider his constitutional and jurisdictional arguments.

Finally, the idea that "Hijazi has nothing to lose from an unfavorable ruling on his motion," Gov. Mot. at 2, is simply incorrect. If Hijazi's motion to dismiss is denied, he will remain under indictment. The harm to his livelihood, reputation, freedom to travel, and family relationships will continue. Hijazi has lost much already, and he will lose more still if the motion to dismiss is not granted. Because the Government's indictment of Hijazi has deprived him of liberty, the Government should be required to establish that the current prosecution falls within this Court's jurisdiction.

6. The Government asserts that the "weight of authority" is that the Court should not rule on Hijazi's motion because he is overseas. Gov. Mot. at 6. But the Government provides no support for that assertion; it never identifies that allegedly weighty line of authority. In contrast, Hijazi has explained that both case law and the Federal Rules of Criminal Procedure support the view that his motion to dismiss should be decided on the merits. *See* Hijazi Mem. at 38-40 (citing, *inter alia*, *United States* v. *Shapiro*, 391 F. Supp. 689 (S.D.N.Y. 1975), *United States* v. *Golden*, 239 F.2d 877 (2d Cir. 1956) (Frank, J., concurring), *United States* v. *Diacolios*, 837

10

F.2d 79 (2d Cir. 1988), and Fed. R. Crim. P. 12(b)(2), 12(d), 43(b)(3), and 57(b)).  The Government makes no effort to respond to that portion of Hijazi's memorandum.

The Government cites Justice Douglas' opinion in *Hughes* v. *Thompson*, 415 U.S. 1301 (1974).  *See* Gov. Mot. at 4.  But that case actually supports Hijazi's position.  In *Hughes*, Justice Douglas concluded that a district court "certainly has the power" to rule upon a pre-arraignment challenge to the sufficiency of an indictment.  415 U.S. at 1302.  4/  He also emphasized that ruling on such challenges prior to arraignment "may be important to prevent harassment or the use of other unconstitutional procedures against an accused."  *Id.*  Following Justice Douglas' opinion, the district court granted Howard Hughes' motion to dismiss the indictment, even though Hughes had not submitted to the jurisdiction of the court:

> Exercising the power which Justice Douglas had declared
> it to possess, the district court considered the validity
> of the indictment, found it to be insufficient on its face,
> and dismissed it, although the court had not acquired
> jurisdiction of the person of the defendant (who may
> have remained outside the United States while these
> proceedings were taking place).

*Lockwood*, 382 F. Supp. at 1116-17.  Thus, Justice Douglas' opinion in *Hughes* and the subsequent course of that litigation supports Hijazi's position that this Court should rule on his motion to dismiss.

The Government also cites *United States* v. *Oliveri*, 190 F. Supp. 2d 933 (S.D. Tex. 2001).  *See* Gov. Mot. at 5.  In *Oliveri*, the defendant, an Italian citizen, was served with a grand jury subpoena in Houston, Texas while he was there on

---

4/    Justice Douglas' opinion was a ruling, in his capacity as Circuit Justice, on a motion for leave to file a petition for mandamus.  It was not an opinion for the Court.

11

business. After he failed to appear before the grand jury, he was indicted for criminal contempt of court.

There are two very significant differences between *Oliveri* and this case. First, Oliveri, unlike Hijazi, was a fugitive and was regarded as such by the *Oliveri* court. The court expressly found that "Oliveri is in fact a 'fugitive.' " *Oliveri*, 190 F. Supp. 2d at 936. Accordingly, Oliveri was subject to the fugitive disentitlement doctrine. Hijazi is not a fugitive and hence is not subject to that doctrine. This Court has already ruled that Hijazi is not a fugitive, and that ruling was correct. 5/ Indeed, the Government does not contend otherwise. Second, Oliveri committed his crime within the United States. He was served with a grand jury subpoena while he was present in the United States by his own volition and then failed to appear before the grand jury. In contrast, Hijazi's alleged conduct occurred entirely overseas and he "has never been physically present within the jurisdiction of this Court." July 20, 2005 Order at 3.

Assuming that this Court has discretion (rather than a duty) to decide whether it will decide Hijazi's motion to dismiss, it should exercise that discretion in favor of deciding the motion. Hijazi, a foreign national who has never set foot in Illinois, should be allowed to challenge the indictment because it is "important that our frequent protestations about due process, presumptions of innocence and fair play be given meaning." *United States* v. *Noriega*, 683 F. Supp. 1373, 1375 (S.D. Fla.

---

5/   Rejecting the contrary view of the magistrate judge, this Court ruled that Defendant is not a fugitive "because Hijazi has not yet been convicted of a crime, Hijazi has never been physically present within the jurisdiction of this Court, and he has submitted to Kuwaiti authorities." July 20, 2005 Order at 3.

12

1988).  In *Noriega*, the court permitted a foreign defendant who was outside of the United States, General Manuel Noriega, "to contest the jurisdiction of the court in this matter, and to attack the legal sufficiency of the indictment."  *Id*. at 1374.  The court rejected as "unacceptable" the Government's objection to allowing him to do so.  *Id*. at 1375.  As the court stated:

> Presumably the factual and legal bases for the indictment were considered by the Justice Department to be entirely adequate when the indictment was returned. . . . If the charge is to stand in the records of this court with the implications which flow from an unanswered indictment, the Government should be quite willing to support its position and disavow any idea that the continuation of a possibly defective indictment should remain outstanding until the defendant appears with his attorney to demonstrate such a defect.  [*Id*.]

Citing the fact that Noriega "is under our legal system innocent until proven guilty" as well as "basic notions of due process," the *Noriega* court decided "to hear arguments, at the outset of the case, discussing the validity of the indictment."  *Id.*.

Notably, the court allowed Noriega to challenge the validity of the indictment from abroad even though he was at the time a fugitive.  *See id*. at 1373 ("Noriega is a fugitive.").  Hijazi, who is not a fugitive, surely does not deserve to be treated worse than General Noriega.  Unlike Noriega, Hijazi has done nothing to waive or disentitle himself from the procedures and protections ordinarily available to the accused.  No less than Noriega, Hijazi is entitled to the presumption of innocence and the protections of the Due Process Clause.

7. Finally, the Government's fall-back request for "a briefing schedule for the parties to submits briefs on the merits" (Gov. Mot. at 7), should be denied.  The

13

Government has had more than ample opportunity to respond to the merits of Hijazi's motion. Indeed, this Court on January 3, 2008, ordered the Government to "file a brief in response" to Hijazi's motion by January 24, 2008. The Government failed to do so. The Government has had, literally, years to consider and prepare a response to the arguments that Hijazi first raised in May 2005. The Government has forfeited its opportunity to submit a brief on the merits. After denying the Government's motion to hold in abeyance Hijazi's motion to dismiss, the Court should proceed to grant Hijazi's motion, which it can do for all of the reasons presented in support of the motion or any of them (such as the Rule 48(b) failure-to-prosecute argument).

## CONCLUSION

For the foregoing reasons, as well as those stated in the memorandum supporting Defendant's motion to dismiss, the Government's motion to hold Defendant's motion to dismiss in abeyance should be denied. The Court should instead grant Defendant's motion to dismiss.

Respectfully submitted,

s/ H. Christopher Bartolomucci
Ty Cobb
H. Christopher Bartolomucci
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
Fax: (202) 637-5900
TCobb@hhlaw.com
HCBartolomucci@hhlaw.com

Dated: February 11, 2008          *Counsel for Defendant Ali Hijazi*

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 11, 2008, I electronically filed the foregoing Defendant Ali Hijazi's Opposition to the Government's Motion in Response to Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of the filing to:

>John A. Michelich
>Senior Trial Attorney
>United States Department of Justice
>Criminal Division, Fraud Section
>10th Street & Constitution Avenue, N.W.
>Bond Building, Room 4118
>Washington, D.C. 20530
>
>Jeffrey B. Lang
>Assistant United States Attorney
>1830 Second Avenue, Third Floor
>Rock Island, IL 61201
>
>Matthew J. Cannon
>Assistant United States Attorney
>1830 Second Avenue, Third Floor
>Rock Island, IL 61201
>
>*Counsel for Plaintiff*
>
>J. Scott Arthur
>14315 South 108th Avenue
>Suite 222
>Orland Park, IL 60467
>
>*Counsel for Defendant Jeff Alex Mazon*

                                          s/ H. Christopher Bartolomucci
                                          H. Christopher Bartolomucci