UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-40024 |
| ALI HIJAZI, | ) |
| Defendant. | ) |

**DEFENDANT ALI HIJAZI'S MOTION FOR LEAVE TO RESPOND TO THE GOVERNMENT'S CITATION OF SUPPLEMENTAL AUTHORITY**

Defendant Ali Hijazi hereby moves for leave to respond to the government's letter brief regarding *United States* v. *Leija-Sanchez*, 2010 WL 1375407 (7th Cir. Apr. 8, 2010). *See* Doc. 225.

*Leija-Sanchez* involved the prosecution of a U.S. resident for a racketeering-related murder that he arranged and paid for in the United States. The Seventh Circuit held that extraterritoriality doctrine did not present an obstacle to the prosecution.

The government dutifully notes that the *Leija-Sanchez* opinion "is pertinent" to this case, and predictably (although halfheartedly) asserts that the opinion "supports the government's position here." Doc. 225 at 1, 2. The truth, however, is that *Leija-Sanchez* does not aid the government in the slightest while it confirms Hijazi's reading of *United States* v. *Bowman*, 260 U.S. 94 (1922).

### 1. Leija-Sanchez was a U.S. resident charged under 18 U.S.C. § 1959 whose criminal conduct took place in the United States.

*Leija-Sanchez* is clearly distinguishable from this case, for several reasons. First, that case involved an entirely different criminal statute, 18 U.S.C. § 1959, one that expressly applies to criminal enterprises engaged in or affecting "interstate or foreign commerce." *Id*. § 1959(b)(2). As the Seventh Circuit noted, "Section 1959 applies to enterprises that engage in or affect 'foreign commerce'; this rule cannot be implemented if the existence of activities abroad prevents application of § 1959 to those acts and effects that occur in the United States." *Leija-Sanchez* at *2.

Second, Leija-Sanchez was not charged with wholly extraterritorial conduct. On the contrary, "[t]he "indictment alleges that Leija-Sanchez's conduct took place 'in substantial part' in this nation — indeed, *all* of the conduct ascribed to Leija-Sanchez took place here." *Leija-Sanchez* at *4 (emphasis in original). By contrast, it is undisputed that *none* of Hijazi's alleged conduct occurred in the United States.

Finally, Leija-Sanchez, unlike Hijazi, was a resident of the United States and Illinois. *See Leija-Sanchez*, N.D. Ill. Doc. 428 at 1 (government filing).

Given § 1959's text, the fact that Leija-Sanchez's conduct occurred in the United States, and his U.S. residency, it is no wonder that the Seventh Circuit was able to say that "this prosecution is easy to support." *Leija-Sanchez* at *4. The same surely cannot be said here. Indeed, the Seventh Circuit in *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), stated that "Hijazi's arguments raise serious questions about the reach of U.S. law." *Id*. at 411. In *Leija-Sanchez*, the Seventh Circuit noted that the crime at issue — murder — was forbidden in Mexico as well as the

United States. *See Leija-Sanchez* at *1. But as Hijazi stated in support of his motions to dismiss, "[t]he alleged conduct of which Hijazi is accused is not a crime in Kuwait." Motion to Dismiss Second Superseding Indictment ¶ 6 (Doc. 131).

2.  *Leija-Sanchez* **did not present issues of international law.**

This case also differs from *Leija-Sanchez* in that the prosecution of Hijazi raises significant issues of international law. As this Court knows, the Government of Kuwait has forcefully protested this prosecution, thus confirming the genuine international-law issue. *See* Hijazi Reply 25-28. In *Leija-Sanchez*, there was no such protest. In fact, the Government of Mexico "extradited [Leija-Sanchez] to the United States to face all of the indictment's charges" and "saw no reason why the United States should not apply its substantive rules" to him. *Leija-Sanchez* at *4.

While the Seventh Circuit was able to say in *Leija-Sanchez* that "[a]pplying § 1959 to this contract killing does not violate any rule of international law and is compatible with the norms that govern application of criminal statutes to international criminal enterprises," *id.*, nothing similar can be said here. The prosecution of Hijazi, a foreign national, for an alleged fraud in Kuwait is not consistent with international norms. *See* Hijazi Reply 28 (citing the Restatement's observation that criminal prosecution of overseas acts generally is limited to cases where the foreign nation does not object).

3.  *Leija-Sanchez* **confirms Hijazi's reading of** *Bowman.*

Finally, although the government asserts that *Leija-Sanchez* supports its reading of *Bowman*, the opposite is true. The government's letter brief misreads

3

*Leija-Sanchez*, misstates Hijazi's position with respect to *Bowman*, and continues to misinterpret *Bowman* itself.

Hijazi, unlike Leija-Sanchez, has never argued that *Bowman* should be "overruled," which of course a lower court cannot do. Rather, Hijazi's argument is that the Major Fraud Act ("MFA") is not the kind of statute subject to the *Bowman* doctrine. *See, e.g.*, Hijazi Reply 32-37. *Leija-Sanchez* confirms Hijazi's argument.

*Leija-Sanchez* explains that "*Bowman* does not hold that criminal statutes must always apply extraterritorially. It concludes that judges must consider the language and function of the prohibition." *Leija-Sanchez* at *2. The *Bowman* court thus found that a statute designed to protect the Fleet Corporation would necessarily implicate international shipping. *Bowman*, 260 U.S. at 101-102. Similarly, the statute in *Leija-Sanchez* concerned criminal enterprises engaged in or affecting "interstate or foreign commerce."

But the Major Fraud Act contains no such language or function. First, the MFA contains no statutory text suggesting, let alone requiring, extraterritorial application. Second, unlike the *Bowman* statute, the MFA was not enacted to deal with a specific international conflict such as World War I. Rather, the MFA is a general fraud statute. It does not contain, and the government has not argued that it contains, any implicit design to reach extraterritorial conduct.

The government attempts to bypass this by suggesting that "criminal statutes apply even when elements of the crime occurred abroad." But *Leija-Sanchez* does not support the extraterritorial application of *any* criminal statute.

4

Instead, it reaffirms *Bowman*'s requirement that courts examine the "language and function" of criminal laws before determining their extraterritorial effect. To hold that *Bowman* applies to the MFA — which has no language or function requiring overseas application —would thus contravene both *Bowman* and *Leija-Sanchez*.

*Leija-Sanchez* is controlling authority interpreting *Bowman*. And there is no doubt which party it supports — Hijazi.

>
> Respectfully submitted,
>
> s/ H. Christopher Bartolomucci
> H. Christopher Bartolomucci
> Thomas L. McGovern III
> HOGAN & HARTSON L.L.P.
> 555 Thirteenth Street, N.W.
> Washington, D.C. 20004-1109
> Telephone: (202) 637-5810
> Facsimile: (202) 637-5910
> HCBartolomucci@hhlaw.com
> TLMcGovern@hhlaw.com
>
> Zaldwaynaka Scott
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 782-0600
> Facsimile: (312) 706-8308
> ZScott@mayerbrown.com

Dated: April 29, 2010               *Counsel for Defendant Ali Hijazi*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2010, I electronically filed the foregoing Defendant Ali Hijazi's Motion for Leave to Respond to the Government's Citation of Supplemental Authority with the Clerk of the Court using the CM/ECF system which will send notification of the filing to:

> Jeffrey B. Lang
> Joseph H. Hartzler
> Matthew J. Cannon
> John A. Michelich
>
> *Counsel for the United States*

> s/ H. Christopher Bartolomucci
> H. Christopher Bartolomucci